**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2229**

VAHID SEDGHI,

　　　　　　　　Plaintiff - Appellant,

　　　　v.

PATCHLINK CORPORATION, a Delaware Corporation,

　　　　　　　　Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.　J. Frederick Motz, Senior District
Judge.　(1:07-cv-01636-JFM)

Submitted:　June 14, 2011　　　　　Decided:　July 22, 2011

Before TRAXLER, Chief Judge, SHEDD, Circuit Judge, and HAMILTON,
Senior Circuit Judge.

Affirmed in part, reversed in part, and remanded by unpublished
per curiam opinion.

Francis J. Collins, Darragh L. Inman, KAHN, SMITH & COLLINS,
P.A., Baltimore, Maryland; Clay M. Barnes, LAW OFFICE OF CLAY M.
BARNES, Towson, Maryland, for Appellant.　John Alan Doran,
Juliet Speisman Burgess, Phoenix, Arizona; Steven M. Schneebaum,
GREENBERG TRAURIG, LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Vahid Sedghi appeals a district court order granting summary judgment against him in his action against his former employer arising out of an alleged failure to honor a promise to pay him a commission. We affirm in part, reverse in part, and remand.

I.

Viewing the facts in the light most favorable to Sedghi, as we must in reviewing a grant of summary judgment against him, the record reveals the following. PatchLink was a small software company based in Arizona. In 2004, a group of venture capital firms invested approximately $35 million in the company. At that time, the company was managed by its founder, Sean Moshir, and his brother, Kourosh Moshir. Shortly after the closing of the venture capital investment, Sean asked Sedghi, whom he knew from college, to join the company.

On September 4, 2004, Sedghi signed PatchLink's standard employment agreement, the compensation portion of which provided:

a. As compensation for the services provided by employee under this AGREEMENT, EMPLOYER will pay EMPLOYEE an initial annual salary of $135,000 dollars . . . .

b. Employer will provide N/A stock option to the employee . . . .

2

> c. Commission is paid according to PatchLink sales policy.
>
> d. There are no other compensation, incentive, bonuses, payments, stocks, deferred payments, deferred salary, stock options or any other payment due to the employee other than what is set forth in this agreement unless otherwise added as amendment to this cont[r]act and signed by both the EMPLOYEE and the president of the company.

J.A. 353. Unlike with some PatchLink employees who had clearly defined, written commission plans, no writing identified the rate of Sedghi's commission or what products or services would warrant a commission. The agreement provided that it "shall be construed and enforced in accordance with the laws of the State of Arizona." J.A. 358. Sedghi began work on September 7, 2004.

According to Sedghi and the Moshirs, around the time that Sedghi signed his employment contract, Sean also orally promised Sedghi that he would be entitled to a commission of one percent of PatchLink's sales. Sedghi would be paid this commission in October 2005, at which time the parties would memorialize this obligation in writing. However, the Moshirs were no longer PatchLink employees by October 2005. The obligation was never memorialized and Sedghi never received the commission.

Sedghi brought this action against PatchLink—which is now called "Lumension Security, Inc."—asserting several claims regarding PatchLink's failure to pay him the commission he was

3

allegedly promised. Among other claims, he alleged causes of action for breach of contract, loss of commission under the Maryland Wage Payment and Collection Law ("MWPCL"), and promissory estoppel. Considering cross-motions for summary judgment, the district court granted PatchLink's motion and denied Sedghi's.

The district court ruled that Sedghi's breach of contract claim was governed by Arizona law and that it was barred by the Arizona statute of frauds because the September 2004 oral promise to pay Sedghi a one-percent commission in October 2005 could not be performed within one year of the making of the promise. See Ariz. Rev. Stat. § 44-101(5). In this regard, the court determined that there was no evidence that Sedghi was entitled to any such commission if he left PatchLink before October 2005.

As is relevant here, the court ruled that Sedghi's MWPCL claim was barred because there is no cause of action that may be brought under the MWPCL for a promise that was not enforceable under the statute of frauds. And, applying Maryland law to Sedghi's promissory estoppel claim, the court determined that the claim failed because it was inequitable by its nature, as we will explain.

4

Sedghi first argues that the district court erred in ruling that his claim that he was promised a one-percent commission as part of his compensation was barred by the statute of frauds because the promise could not be performed within one year. We disagree.

Sedghi does not dispute that the oral promise was made more than one year prior to October 2005. However, he maintains that it could have been performed in one year or less because Sedghi was an at-will employee and PatchLink would have been obligated to pay him his one-percent commission if he had been terminated prior to October 2005. Although the district court rejected this argument on the basis that there was no evidence that the parties had agreed Sedghi would be entitled to any of the commission if his employment terminated prior to October 2005, Sedghi simply argues that "there is no evidence whatsoever in this record that PatchLink would not be obligated to pay Sedghi his one percent commission on all sales prior to the expiration of one year." Brief of Appellant at 16. By advancing only a conclusory argument, Sedghi has likely waived the issue. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (holding that conclusorily assigning error without providing supporting argument is insufficient to raise issue). However, even if the issue were not waived, the

5

district court correctly concluded that Sedghi forecasted no evidence that he was promised any commission in the event that he was no longer with the company in October 2005.

To the extent that the oral promise made in September 2004 required Sedghi to still be in the company's employ in October 2005 to become entitled to the commission, the district court correctly concluded that the statute of frauds barred an action to enforce that promise because, under the very terms of such an agreement, performance could not be completed within one year. Sedghi argues at length that the district court should have considered parol evidence that the parties actually did orally agree that he would be entitled to that commission. This argument misses the point, however. That the parties actually orally agreed that Sedghi would receive the commission does not allow Sedghi to avoid the statute of frauds. To do that, he needs a writing supporting his entitlement to the one-percent commission that is signed by PatchLink's representative. See Ariz. Rev. Stat. § 44-101(5).

III.

Sedghi next challenges the district court's conclusion that the MWPCL does not confer a cause of action for enforcement of a promise when an action on that promise is barred by the statute of frauds. We disagree.

6

The MWPCL requires each employer to pay its employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code, Lab. & Empl. § 3-505(a). Sedghi maintains that even if the applicable statute of frauds would generally bar him from filing suit on the alleged oral promise of a one-percent commission, he may bring an action under the MWPCL. However, as the district court concluded, there is simply no indication that the Maryland legislature intended that the MWPCL would essentially trump the statute of frauds or other prohibitions on the enforcement of certain promises.[1] Thus, the district court properly granted summary judgment on this claim.

IV.

Sedghi finally argues that the district court erred in granting summary judgment on his claim for promissory estoppel. We agree.

---

[1] Like the Arizona statute of frauds, the Maryland statute of frauds prohibits the bringing of an action that cannot be performed within one year of the making of the agreement unless the agreement, "or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party." Md. Code, Cts. & Jud. Proc., § 5-901.

7

To prevail on a claim of promissory estoppel under Maryland law, the plaintiff must show that there was "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise." Pavel Enters. v. A.S. Johnson Co., 674 A.2d 521, 532 (Md. 1996) (emphasis omitted). The district court acknowledged that "[m]echanical application of these four elements may seem to indicate that [Sedghi] does have a viable promissory estoppel claim." J.A. 918. The district court nonetheless noted that Pavel requires that

> in applying the fourth element, the trial court, and not a jury, must determine that binding the defendant is necessary to prevent injustice. This element is to be enforced as required by common law equity courts— the Plaintiff must have clean hands. This requirement requires the further determination that justice compels the result.

J.A. 918-19 (internal quotation marks and alterations omitted). The court reasoned that under this principle, Sedghi's promissory estoppel claim was "by its nature . . . inequitable":

> It is based upon the assertion that (1) Plaintiff was orally promised a substantial commission by his college roommate, who was then an owner of defendant; (2) the alleged promise was unenforceable under the statute of frauds and inconsistent with the language of the written employment agreement into which Plaintiff entered; (3) Plaintiff was handsomely

8

compensated for the work that he performed for defendant without consideration of the alleged commission; (4) Plaintiff bases his claim solely upon the testimony of himself, his former college roommate, and his former college roommate's brother, and (5) Plaintiff's college roommate and his brother, as well as plaintiff, would benefit from holding defendant liable in this case because Plaintiff's college roommate and his brother have now started a business that competes with Plaintiff.

J.A. 919.

We hold that the district court's analysis is flawed. Viewed in the light most favorable to Sedghi, as it must be at the summary judgment stage, the forecasted evidence shows that Sedghi and the Moshir brothers testified truthfully regarding the commission promise. In that event, their prior relationship would be irrelevant as would any other incentive the Moshirs had to testify as they did. It appears that the district court, in concluding otherwise, erred in making credibility determinations at the summary judgment stage. Additionally, that Sedghi was well compensated is not dispositive of his claim so long as PatchLink's promise nevertheless induced actual and reasonable action or forbearance by him. Finally, that the statute of frauds bars enforcement of the oral promise only supports Sedghi's promissory estoppel claim as it leaves promissory estoppel as his only remaining possible avenue for relief for the loss incurred. Thus, we conclude that the facts identified

9

by the district court do not justify the grant of summary judgment against Sedghi on his promissory estoppel claim.

V.

In sum, we reverse the grant of summary judgment to PatchLink on Sedghi's promissory estoppel claim but otherwise affirm the district court's judgment. We therefore remand to the district court for further proceedings consistent with this opinion.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

[2] PatchLink requests that we award it attorneys' fees and costs for defending this appeal. See Ariz. Rev. Stat. § 12-341.01. We do not address this issue but leave it to the district court to resolve at the appropriate time.