Matthew M. Levy, J.
This is an accounting proceeding involving an inter vivos trust. When the matter came before me originally, I referred the issues to a Referee to hear and to report with his recommendations. After extended hearings before, and the submission of extensive briefs to, the Referee, he submitted his reports. Those reports were, on motion, thereafter approved by me after full argument and consideration.
Section 1514-a of the Civil Practice Act provided, inter alia, that: ‘ ‘ When an order or a decree is made in any action or proceeding which involves the construction of a will or an inter vivos trust instrument, or after appeal, the court, in its discretion, may allow to the fiduciary or to any other party to the action or proceeding, such sums as it deems reasonable for counsel fees and other expenses necessarily incurred with respect to such construction in such action or proceeding or on any appeal.”
In the order of confirmation, dated October 16,1962,1 reserved for later determination the matter of the fixation of the amounts of the allowances requested by the attorneys — that is, until subsequent to the expiration of the time to appeal from that order, or, if an appeal be taken, then after the final disposition thereof, all as further provided in section 1514-a of the Civil Practice Act and now in paragraph 4 of subdivision (a) of section 8303 in the *7 new Civil Practice Law and Rules (Matter of Katz [Ammond], 39 Misc 2d 295).
No appeal having been taken and the time to do so having expired, the parties have now moved for allowances for the services performed by their respective attorneys. Counsel representing both Eva Bittson and Margaret Bittson Mansfield seek an allowance to be charged solely to the two thirds of the trust corpus belonging to A, John Bittson. Counsel representing A. John Bittson also asks a fee — but only if the Court grants an allowance to Eva, his former wife, and to Margaret, his daughter and the fee is sought by him to be charged against the trust fund as a whole, i.e., inclusive of Eva’s one-third interest therein.
Section 1514-a of the Civil Practice Act was (and its successor statute, paragraph 4 of subdivision [a] of section 8303 of the Civil Practice Law and Buies, is) similar in substance to section 278 (4th par.) of the Surrogate’s Court Act, relating to testamentary estates, and the two statutes are construed similarly by the courts (see Matter of Liberman, 6 N Y 2d 525, 533). And if, as the respondent A. John Bittson contends, there was no issue of construction in the proceeding-in-chief, no allowance is permissible (see Matter of Liberman, supra, pp. 530-531). But I disagree with the contention. Indeed, in my memorandum decision of May 7, 1962, which gave rise to the afore-mentioned order of October 16, 1962, I expressly noted that there was before the Court for disposition a “ rather difficult construction and accounting proceeding — involving an interesting familial inter vivos trust.”
Among other things, the Court was required to determine the meaning of articles II (c), III (a) and III (g) of the trust instrument, which, considered together, provided for the divestiture of Margaret’s two-thirds interest in the trust corpus in favor of A. John Bittson, her father, the donor, in the event she married “ over the objection of the donor.” There is no merit in the argument that the meaning of this phrase is so obvious as not to create an issue of construction thereof. In Matter of White (16 Misc 2d 645) for example, the Court — granting allowances under section 1514-a- — -held that a bona fide issue of construction was involved where the testatrix provided in her will for the forgiveness of debts “ due and owing to me ”, and the Court simply decided that, by such phrase, the testatrix did not forgive a debt owed to the inter vivos trust earlier established by her. The meaning of the phrase “ over the objection of the donor ” in the case at bar is hardly as apparent as the one in White.
*8 The status of, or right in, Margaret (which was sought to he established in the instant proceeding) was not to be determined solely by facts external to the instrument, but rather by reliance as well upon a particular construction of the document itself. That differentiates the present case from others like Matter of Curley (161 Misc. 391); Matter of Seyfried (176 Misc. 759); Matter of Redmond (N. Y. L. J., Nov. 13, 1961, p. 15, col. 8 [Surrogate’s Ct., N. Y. County, Cox, Surrogate] and Matter of Newins, N. Y. L. J., March 29, 1963, p. 20, col. 2 [Surrogate’s Ct., Suffolk County, Hildreth, Surrogate]).
Margaret urged that the phrase here required that the settlor’s objection to the marriage be definite and explicit. The contention of the donor was to the contrary; and the Referee, in his report, confirmed by me, held that Margaret’s plea was not persuasive. On that issue, it was held that if the donor ‘1 intended the language which he used in his communications to his daughter to constitute an objection to his daughter’s marriage, and if his daughter understood that language to mean that her father objected, it can make little difference what language was actually used * * * *. If * * his daughter understood that language to be an objection, it would seem quite absurd to hold that there was no objection, on the ground that the language used might not be considered by other parties or under other circumstances to constitute an objection.” (Referee’s Report, dated Feb. 10, 1961, p. 7.)
Obviously, that is construing what was meant in the trust instrument by the crucial phrase there used — “ over the objection of the donor ”. The Court had necessarily to consider what facts and circumstances constituted an “ objection ” to Margaret’s marriage within the meaning of that phrase as expressed in the instrument. It is obvious, too, that the Court was required to construe the critical clause here involved either prior to or contemporaneously with a finding of whether the donor’s later letters constituted such an “ objection ”. That the Referee was therefore required to go outside .the trust agreement to determine whether the 11 objection ” intended by the donor therein was in fact interposed by the donor’s communications does not, in my view, change the proceeding from one involving construction to one establishing status. There was an interdependence between the definition attached to and construction of the phrase in the instrument and the evaluation of the meaning and content of the letters, in the light of all the circumstances. That does not, I hold, denude this proceeding of its construction features or deprive the Court of its discretion to grant allowances. For, as in Matter of Liberman (6 N Y 2d 525, 531, supra) where “ the *9 original intent of the testator is in doubt, or his language is ambiguous and it is necessary to determine what the intent might be, the proceeding is * * * one to construe a will ’ ’, so, here, where we are seeking to ascertain the intent of, on the basis of the language used by, the settlor of a trust, the proceeding is one to construe the trust instrument.
Moreover, the Referee also made a recommendation, approved by me, upholding the validity of the trust provision concerning marriage. Margaret claimed that the limitation was unlawful because of its tendency to discourage marriage. A. John Bittson now asserts this was a sham issue before the Court. Such a contention is hardly plausible since his counsel deemed it necessary, in order to meet the contention, to make “ an intensive analysis of the relevant authorities, both decisional and textual, including unpublished law memoranda of the American Law Institute relating to the section on Conditions on Restraint of Marriage ” (affidavit of Julian Bush, p. 5).
That the settlor — as the successful party in his contest on the major issue in this construction proceeding — is entitled to an allowance out of the general estate goes without saying. And in determining whether Margaret is also to be awarded an allowance for her counsel’s services, it is of no conclusive consequence here — any more than in Liberman (6 N Y 2d 525, 530, supra) — that her contention was not accepted by this Court. The Court has requisite power, under section 1514-a, to grant an allowance even “to an unsuccessful litigant [where an issue of construction has been litigated] as the nature and importance of the subject matter and the good faith of the participant may warrant ” (Matter of Syracuse Univ. [Hendricks], 14 Misc 2d 847, 849; cf. Matter of Wren, 21 Misc 2d 494). The allowances granted reflect the court’s appraisal of the value to the estate generally of the services performed (Matter of Charles, 2 Misc 2d 928) and are without prejudice to the right of counsel to seek directly from their respective clients such additional compensation as may be just and reasonable in the circumstances (Matter of Gibson, 10 Misc 2d 282).
Not only was there an issue as to whether Margaret had married over the “ objection ” of her father, but also as to whether Margaret had any right to the trust income in excess of $1,300 payable to her mother, which had been accumulating since Margaret reached the age of twenty-one. The Referee found (contrary to the contention of the settlor, and the Court confirmed the finding) that Margaret was entitled to receive the balance in cash of the sum of $9,464.43, which is her share of the trust income from October 20,1953, the date of her 21st birth *10 day, to May 7, 1956, the date of the termination of the trust by virtue of her marriage over her father’s objection. Thus, in that separate and distinct aspect of the case, Margaret was successful and John was not.
A. John Bittson argues further that, as a matter of law, the trust fund should not be required to reimburse either Margaret or her mother for legal expenses for the benefit of their common counsel, who allegedly failed to disclose to the court a claimed conflict of interest in representing both of them — asserted by him and not by either of them; and he relies upon Woods v. City Bank Co. (312 U. S. 262), in support of the contention. This Court is not compelled to adopt the conclusion thus projected. Woods was a case which arose under Chapter X of the Bankruptcy Act, and the Court denied reimbursement in the exercise of discretion. Furthermore, the Court there said (pp. •269-270): “ The rule disallowing compensation because of conflicting interests may be equally effective to bar recovery of expenditures made by a claimant subject to conflicting interests * * *. On the other hand, those expenditures normally should be allowed which have clearly benefited the estate * * ®. Such classification of expenses * 2 * rests in the sound discretion of the bankruptcy court.”
Moreover, the conflict, if any there were in the case at bar, was not surreptitiously hidden from the court. On the contrary, the situation was patently obvious from the conceded facts, the undisputed assets and the inevitable distribution dependent upon the resolution of the construction issue. Eva’s financial interest was at least technically advantageously affected by the construction ultimately reached, for her otherwise defeasible interest (i.e., if she died before termination of the trust) became absolutely vested by the construction adopted, and her nontransferable income interest to the extent of $1,300 per annum has become transferable interest in one-third of the trust principal. But that is not all there was to the picture. Eva was evidently desirous of having Margaret succeed on the construction issue as to the meaning of “ objection ” — not only because of the major financial benefit to Margaret in the event of that outcome, as compared to Eva’s financial benefit if Eva’s former husband were successful, but also because Eva was interested as well in the matter of matrimonial controversy and familial security in the circumstances here existing.
Fundamentally, the Court’s main concern is not with the propriety of the acceptance by the attorney of professional responsibility to the two clients or of the alleged inadequacy of the services rendered to one of them, but rather with the nature *11 of the service to the estate as a whole — which I hold was of collective helpful benefit in this case to Margaret and to John and to Eva, the only persons interested in the estate.
By the same token, the contention made by Margaret and Eva — that John’s share alone should be charged with the allowances granted — is overruled. Payment of allowances from the general estate is justified because the definitive clarification of the trust instrument was necessary for a settlement of the entire estate (Matter of Gibson, 10 Misc 2d 282, 283, supra). As a general rule, costs and allowances are assessed against the general or residuary estate (see Matter of Ablett, 3 N Y 2d 261, 278-279; Matter of Griffing, 31 Misc 2d 266). Counsel for Eva assert that this rule is usually qualified to the extent that only those portions of the estate which are affected by the construction are subject to these costs and allowances. (See Matter of Upjohn, 304 N. Y. 366, 379; Matter of Dickinson, 10 Misc 2d 280.) That is generally true, but, as has been seen, Eva had a direct financial and a deep personal interest in the proceeding — and, as such, her share of the estate cannot escape the equitable burden of the expense of the proceeding. Furthermore, it would be unjust to allow Margaret, with Eva’s support, to obtain an allowance solely from the share distributable to John. Having failed (by virtue of their lack of success in the matter of the major construction issues herein) to obtain that share of the trust property directly, it would seem that they are now seeking to accomplish some of the same by indirection.
On the other hand, I hold that Eva Bittson is not entitled to an allowance for counsel fees from the general estate. She did not file an answer with respect to the construction phases of the proceeding. Consequently, she contributed nothing toward their resolution. (See Matter of Charles, 2 Misc 2d 928, supra.) In Matter of Gibson (10 Misc 2d 282, 283, supra) attorneys who did not file briefs with the court and who did not take an active part in resolving the question of construction were held not to be entitled to compensation from the general estate since ‘ ‘ their services were not so beneficial to the estate as to justify compensating them therefrom ”,
Now, as to the amount of the allowances. I must say that those requested are altogether out of line; and in thus expressing my view, I do not withdraw one tittle of the comment I made some time ago in a memorandum decision in this case about the “ vigorous advocacy with which capable counsel have ” handled this difficult matter. John asks $30,000 from the estate for his attorney; Eva and Margaret $15,000 for theirs. If the counsel, with the consent of their respective clients, cannot agree upon *12 joint recommendations to the Court, I shall, upon the settlement of the order, fix the allowances to be granted.
Among other factors, due consideration should be given to the size and distribution of the estate. In the order of the Court dated October 16, 1962, in which the report of the Referee was approved and confirmed, the summary statement of the account of the trustee showed that the trustee had on hand in the principal account the sum of $152,900, and in the income account $29,010.50; that the order provides that out of the principal of the trust the following amounts be paid on consent: To the Referee, $8,750; to the attorneys for the trustee, for services and disbursements from 1944 to date, $10,465.34; to the petitioner trustee, $881; to Margaret, $22,019; and to Eva, a third of the net principal remaining, and to John two thirds of the principal then remaining. The order also provides that the following amounts be paid out of the income on hand: To Margaret, $9,464.43 and interest at a specified rate on the aforesaid sum of $22,019; to Eva, a third of the balance of the net income, and to John two thirds of the balance of the net income. Also, the attorneys for the beneficiaries who are now the applicants have agreed upon fees totalling $2,500 for services rendered by them in this accounting proceeding in matters dehors those discussed in this opinion. And finally, each counsel may, of course, still look to his respective client for the payment of such fees as he may be entitled to and not awarded to him herein out of the funds here involved.
Settle one order accordingly on both motions, reciting the papers on all the prior proceedings, and providing for allowances to be awarded out of each available specific fund herein, so that I may the more readily adapt my ultimate determination — as to individual amounts and to whom and out of what — in the order thus presented, without the need for the submission of additional papers.