75 A.3d 952

**OCEAN CITY, MD., CHAMBER OF COMMERCE, INC.**

v.

**Daniel J. BARUFALDI.**

**No. 77, Sept. Term, 2012.**

Court of Appeals of Maryland.

Sept. 24, 2013.

Bruce F. Bright (Ayres, Jenkins, Gordy & Almand, P.A., Ocean City, MD), on brief, for petitioner.

Philip B. Zipin (The Zipin Law Firm, LLC, Silver Spring, MD; Julie Martin–Korb, Rockville, MD), on brief, for respondent.

Jean Zachariasiewicz, Esq., Thomas Davies, Esq., Public Justice Center, Baltimore, MD, John R. Ates, Esq., Alexandria VA, for amici curiae brief of the Public Justice Center, American Civil Liberties Union of Maryland, Maryland Employment Lawyers Association, Metropolitan Washington Employment Lawyers Association, National Federation of the Blind of Maryland, D.C. Employment Justice Center, and Washington Lawyers' Committee for Civil Rights and Urban Affairs, in support of Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and BELL *, JJ.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of the Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## McDONALD J.

The vast majority of states, including Maryland, follow what is known as the "American Rule" on the allocation of the costs of litigation—that is, each party bears its own costs, including attorneys' fees, regardless of the outcome.[1] This is in contrast to the practice in Great Britain—and most other legal systems in the Western world—which follows what is known as the "English Rule" under which the successful party in a law suit may recover the costs of litigation from the losing party.[2]

The American Rule is subject to numerous exceptions, most notably when the Legislature has authorized the award of attorneys' fees by statute.[3] Among the many Maryland statutes that allow for an award of attorneys' fees is the Maryland Wage Payment and Collection Law, *codified at* Maryland Code, Labor & Employment Article ("LE"), § 3–501 *et seq.* That law establishes a private right of action for a worker to obtain compensation from an employer for unpaid wages. Under that law, a successful plaintiff may recover the cost of

---

1. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Empire Realty Co., Inc. v. Fleisher,* 269 Md. 278, 285, 305 A.2d 144 (1973). Of the 50 states, only Alaska generally awards a successful plaintiff attorneys' fees, although at the discretion of the court. Alaska Stat. § 09.60.010; Alaska R. Civ. P. 82(a). *See* Rennie, *Rule 82 & Tort Reform: An Empirical Study of the Impact of Alaska's English Rule on Federal Civil Case Filings,* 29 Alaska L.Rev. 1, 6–11 (2012). Nevada also allows a court to award fees in civil actions involving $20,000 or less. Nev.Rev.Stat. 18.010.

2. Hughes & Snyder, *Litigation and Settlement Under the English and American Rules: Theory And Evidence,* 38 J.L. & Econ. 225 (1995). The English Rule originally allowed only a successful plaintiff to recover litigation costs from a defendant. This benefit was extended to both parties at some point during the reign of Henry VIII and was established by statute in 1607. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 & n. 18, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *St. Luke Evangelical Lutheran Church, Inc. v. Smith,* 318 Md. 337, 344, 568 A.2d 35 (1990).

3. Attorneys' fees may also be awarded when a contract so specifies, or when the wrongful conduct of the defendant forces the plaintiff into litigation with a third party. *See Empire Realty Co.,* 269 Md. at 286, 305 A.2d 144.

legal representation from an employer who wrongfully withheld the plaintiff's pay.

This Court has previously stated that, in light of the purpose of the Wage Payment and Collection Law, a trial court "should exercise [its] discretion liberally in favor of awarding a reasonable fee, unless the circumstances of the particular case indicate some good reason why a fee award is inappropriate in that case."[4] This case concerns whether, in making that determination, a Maryland court should look to the standards that are applied by federal courts in deciding whether to award attorneys' fees in actions brought under the federal Employee Retirement Income Security Act of 1974 ("ERISA"). The trial court in this case applied the ERISA standards in deciding not to make an award.

■ We hold that the purposes and operation of the two statutory schemes, and their respective fee-shifting provisions, are sufficiently dissimilar that the analysis under ERISA should not be imported into the Wage Payment and Collection Law.

## Background

*Maryland Wage Payment and Collection Law*

The Wage Payment and Collection Law sets certain standards for the frequency and methods of compensation, permissible deductions from pay, and notification of employees about the details of pay and changes in the amount or method of payment. LE § 3–502 through § 3–505. "Wage" is defined to include "all compensation that is due to an employee for employment," including bonuses, commissions, overtime, fringe benefits, and other forms of compensation. LE § 3–501(c).

The statute provides for enforcement by the State Commissioner of Labor and Industry[5] through administrative actions

---

4. *Friolo v. Frankel,* 373 Md. 501, 518, 819 A.2d 354 (2003).

5. In the current organization of State agencies, the Commissioner heads the Division of Labor and Industry within the Department of Labor, Licensing, and Regulation. LE § 2–101 *et seq.*

and civil proceedings. LE §§ 3–507, 3–507.1. It also establishes misdemeanor criminal offenses for willful violations of the statute and for knowingly false statements made to a governmental unit or official with respect to an investigation or proceeding under the statute. LE § 3–508.

Pertinent to this case, the statute creates a private right of action for an employee to recover wages that have been wrongfully withheld. LE § 3–507.2. Under that provision, an employee may bring an action to recover unpaid wages if the employer has failed to make payment in accordance with the statute and if two weeks have elapsed since the wages should have been paid. LE § 3–507.2(a). The statute also provides for a successful plaintiff to recover attorneys' fees and costs in certain circumstances:

> (b) If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

LE § 3–507.2(b).

*The Chamber of Commerce Hires Mr. Barufaldi*

Petitioner Ocean City, Maryland Chamber of Commerce, Inc. (the "Chamber"), is a private, nonprofit organization that draws its members from various businesses and professional organizations. It was founded in 1953 to promote local tourism and commerce and derives its income from membership dues, donations, and advertising revenue generated by a subsidiary corporation, Ocean City Guide, Inc., through its publication "The Guide." The Chamber states that it has not earned or reported a "net profit" in recent years.[6]

---

6. More specifically, an affidavit filed by the Chamber's current executive director states that the Chamber itself "has not earned or reported any net profit for well over a decade," that its subsidiary's net revenues subsidize the Chamber's operating losses, and that the subsidiary has "not reported any net taxable income for well over a decade."

In the fall of 2005, the Chamber hired Respondent Daniel Barufaldi as its executive director. His compensation was outlined in a written, back-dated employment agreement executed two months after he had actually begun work. The agreement provided that, during the three-year term of the agreement, he was to receive an annual base salary of $52,000 supplemented by incentive compensation. The incentive compensation was to be computed as a percentage of the Chamber's net revenue—as calculated each quarter—above a baseline figure to be set by the parties within the two months after execution of the agreement. However, the parties did not agree to a baseline amount within that time period or afterwards.

On October 31, 2006, the Chamber proposed to Mr. Barufaldi a new employment agreement that did not include incentive-based compensation and that provided that he could be fired without cause on 30 days notice. At the trial of this case, the Chamber asserted that Mr. Barufaldi asked for this contract and was agreeable to its terms. Mr. Barufaldi contended that the Chamber had no intention of paying him the incentive-based compensation contained in the original agreement and attempted to force him to accept the new contract without that element of compensation. In any event, it is undisputed that Mr. Barufaldi never executed the second contract.

*Resignation, Lawsuit, and Trial*

On January 23, 2007, Mr. Barufaldi resigned as executive director of the Chamber and took a position with another chamber of commerce in Charles County. On April 3, 2008, he filed a lawsuit in the Circuit Court for Worcester County against the Chamber and six former members of the Chamber's board of directors, alleging breach of contract, negligent misrepresentation, and violation of the Wage Payment and Collection Law. The Chamber filed a counterclaim alleging that Mr. Barufaldi himself had breached the contract by failing to perform his duties, by actively seeking employment

elsewhere during the contract period, and by resigning prior to the end of his employment term.

A jury trial was held on April 15 to 17, 2009. At the outset, Mr. Barufaldi voluntarily dismissed his negligent misrepresentation claim and his claims against four of the individual board members; at the close of his case, the court dismissed his claims against the two remaining board members. At the close of the entire case, the Chamber's counterclaim was also dismissed by the court.

The jury returned a verdict in Mr. Barufaldi's favor on both his breach of contract claim and claim under the Wage Payment and Collection Law. It found that the Chamber owed him $60,000 in damages, but declined to award treble damages. The jury also found that there was no "bona fide dispute" regarding the unpaid compensation. The trial court entered a judgment for $60,000 against the Chamber on April 20, 2009.

*Motion for an Award of Attorneys' Fees under the Statute*

Mr. Barufaldi then filed a motion for an award of attorneys' fees and costs under the Wage Payment and Collection Law. He sought $141,523.50 in attorneys' fees and $18,752.47 in costs. The Chamber opposed the request, arguing that the jury's finding of "no bona fide dispute" was erroneous and that the court was not bound by it in determining whether to award attorneys' fees and costs. The Circuit Court denied Mr. Barufaldi's motion without elaborating on the basis for its decision. Both parties noted an appeal. In order to stay the enforcement of the judgment pending the appeal, the Chamber borrowed $60,000 from a financial institution and paid it into the court registry.

*First Appeal*

The Court of Special Appeals affirmed the judgment, but vacated the denial of the motion for attorneys' fees and costs. 196 Md.App. 1, 7 A.3d 643 (2010). The intermediate appellate court held that a trial court must articulate the particular circumstances that justify denying such a motion when a jury makes the predicate finding of willfulness (*i.e.*, no bona fide

dispute) and remanded the case to the Circuit Court for further proceedings.

*Decision on Remand*

Mr. Barufaldi then filed in the Circuit Court a supplemental motion for fees and costs, seeking an additional $41,770.50 in fees and $11,125.86 in costs incurred in litigating the appeal and preparing the new motion. As part of its opposition, the Chamber urged the court to adopt the analysis applied by federal courts in deciding whether to award attorneys' fees in actions under ERISA. As outlined by the federal courts, those factors are:

(1) the degree of the parties' culpability or bad faith;

(2) the ability of the parties to satisfy a fee award;

(3) whether an award of attorneys' fees would deter other persons acting under similar circumstances;

(4) whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*Quesinberry v. Life Ins. Co. Of N.Am.* 987 F.2d 1017, 1029 (4th Cir.1993). The Chamber argued that consideration of these factors weighed against an award in this case; it also filed an affidavit by its executive director stating that an award of attorneys' fees would bankrupt the organization.

On March 25, 2011, the trial court denied, for the second time, Mr. Barufaldi's request for fees. In explaining its decision, the Circuit Court applied the fee-shifting analysis from ERISA cases. The Circuit Court ruled that a fee award was inappropriate because the Chamber had not acted in bad faith; the Chamber would be rendered insolvent by paying the fees; an award would not have any appreciable deterrent effect and might jeopardize the existence of the Chamber; the lawsuit was not of general applicability to other employees but dealt only with Mr. Barufaldi; and the dispute was, on the merits, a "close case."

*Second Appeal*

Mr. Barufaldi appealed the second denial of his motion for a fee award and, in another reported opinion on the subject, the Court of Special Appeals once more reversed the denial of his motion. 206 Md.App. 282, 47 A.3d 1097 (2012). The intermediate appellate court held that the Circuit Court's use of the ERISA factors was erroneous. First, it noted that, under the Wage Payment and Collection Law, two of the factors—whether the employer had acted in bad faith and the relative merits of the parties' positions—were questions resolved by the jury. In addition, the court held that consideration of a defendant's ability to pay the fee award is incompatible with the remedial purpose of the statute.

In its opinion, the Court of Special Appeals did not attempt to identify all of the factors that a trial court might consider in deciding whether to make a fee award under the statute. In a footnote, it suggested that potentially appropriate reasons to deny a fee award would be a "claimant's misconduct" or a claimant's rejection of a settlement offer more favorable than the judgment ultimately obtained. 206 Md.App. at 308 n. 13, 47 A.3d 1097.

The Chamber filed a petition for writ of certiorari, which we granted to decide whether the ERISA fee-shifting factors may be employed to evaluate a plaintiff's request for attorneys' fees and costs under the Wage Payment and Collection Law.

## Discussion

*Standard of Review*

 Under the Wage Payment and Collection Law, if the employer is found to have withheld wages in the absence of a bona fide dispute, a trial court *"may* award the employee . . . reasonable counsel fees and other costs." LE § 3–507.2 (emphasis added). Therefore, "the decision whether to allow any fee is discretionary." *Friolo v. Frankel,* 373 Md. 501, 512, 819 A.2d 354 (2003) ("*Friolo I* ").

■ There is a difference, however, between *how* a trial court makes its decision and *what* decision it makes. The standard that a trial court applies in evaluating whether to award attorneys' fees and costs is a legal decision; the conclusion that the court arrives at after applying that standard to the facts of the particular case is an exercise of discretion. *Wilson–X v. Dep't of Human Res.*, 403 Md. 667, 675, 944 A.2d 509 (2008) ("[T]rial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature").

■ Whether the Circuit Court properly employed the ERISA fee-shifting factors to decide whether to award attorneys' fees and costs under the Wage Payment and Collection Law in this case is a question of law. We review it without deference to the trial court.

*A Comparison of ERISA and the Wage Payment and Collection Law*

Both the Wage Payment and Collection Law and ERISA are related to employment, are designed to protect the interests of employees, and contain fee-shifting provisions. Despite these similarities, the two statutes have distinct purposes and histories and their fee-shifting provisions operate somewhat differently.

*Legislative History and Purpose*
*-Wage Payment and Collection Law*

This Court has previously examined in detail the development of the Wage Payment and Collection Law and its fee-shifting provision. *Friolo I,* 373 Md. at 515–18, 819 A.2d 354. We only briefly recount that history here. When it was originally enacted in 1966, the statute provided for civil enforcement by the Commissioner of Labor and Industry, but did not include a private right of action for workers themselves. Chapter 686, Laws of Maryland 1966. A later amendment of the law encouraged compliance by allowing a court in such an action to award up to three times the unpaid wages if the court found that the withholding was not the result of a

"bona fide dispute"—a provision that now appears in LE § 3–507(b). Chapter 553, Laws of Maryland 1983.[7]

In 1991, budget cuts resulted in the elimination of the unit of the Division of Labor and Industry that enforced the statute.[8] In response, bills were introduced in the General Assembly to create a private right of action under the statute. The two bills—House Bill 1006 (1993) and Senate Bill 274 (1993)—represented different approaches.

Senate Bill 274, as originally proposed, would have provided a private right of action to recover unpaid wages, but without any provision for recovering attorneys' fees and costs. Proponents of a private right of action urged the addition of a fee-shifting provision to establish a stronger deterrent for employers to comply with the law and—given the relatively small amounts typically at issue—a stronger incentive for private attorneys to undertake representation in wage cases. *See* Letter from Constance Belfiore, Executive Director, The Law Foundation of Prince George's County, Inc., to Senator Thomas P. O'Reilly, Chairman, Senate Finance Committee (February 12, 1993); Letter from Winifred C. Borden, Executive Director, Maryland Volunteer Lawyers Service, to Senator Thomas P. O'Reilly (February 9, 1993).

In contrast, House Bill 1006, as originally filed, would have provided for the automatic award of attorneys' fees and treble damages to a successful plaintiff, regardless of whether there was a "bona fide dispute" about the employee's entitlement to

---

7. Previous amendments had added a civil penalty provision—at first 10 percent, and later 20 percent, of the wages due. Chapter 142, Laws of Maryland 1974; Chapter 242, Laws of Maryland 1976. That provision was eliminated when the treble damages provision was added. The 1974 amendment also added a misdemeanor criminal penalty, which currently is codified at LE § 3–508.

8. That unit, at times called the "Employment Standards Service" as well as the "Employment Standards Division," "Wage and Hour Section," and "Wage and Hour Division" was reestablished in 1994, defunded again in 2006, then restored in 2007. *See* Eleanor M. Carey et al., *Report on the Department of Labor, Licensing and Regulation: Maryland Transition* (2007), *available at* http://www.governor.maryland.gov/documents/transition/labor.pdf.

the wages. Opponents argued that the bill would discourage settlements and encourage litigation as employees might opt to go to trial in hopes of winning automatic treble damages. Letter from the Maryland Chamber of Commerce to Senator Thomas P. O'Reilly (March 31, 1993) at 2. There was also concern that, without a "bona fide dispute" defense, "employers would be vulnerable to unscrupulous individuals who might pursue claims in court to obtain payment of such fees and costs." *Id.*

A compromise was ultimately reached. The final version of the legislation allowed (rather than mandated) an award of attorneys' fees as well as treble damages to a successful plaintiff, contingent upon a finding that the withholding of the wages was not part of a "bona fide dispute." *See* Chapter 578, Laws of Maryland 1993.[9] This presumably would enhance access to legal representation for an employee wrongfully treated by an employer without encouraging unnecessary litigation.

█ The private right of action under the statute was thus designed as "a vehicle for employees to collect, and an incentive for employers to pay, back wages." *Medex v. McCabe,* 372 Md. 28, 39, 811 A.2d 297 (2002). Importantly, it was also designed to ensure that an employee will have the assistance of competent counsel in pursuing what is likely to be a relatively small claim. *Friolo v. Frankel,* 403 Md. 443, 457–58, 942 A.2d 1242 (2008) (*"Friolo III"*) (fee shifting provision is an incentive for "attorneys to agree to take on wage dispute cases, even where the dollar amount of the potential recovery may be relatively small").

In light of the purposes of the fee-shifting provision of the statute, this Court has stated that when the factfinder concludes that there was no "bona fide dispute" as to the employer's liability, "courts should exercise their discretion liberally in favor of awarding a reasonable fee, unless the circum-

---

**9.** The private right of action was originally codified as LE § 3–507.1. It was later recodified in its current location as LE § 3–507.2. Chapter 151, § 1, Laws of Maryland 2010.

stances of the particular case indicate some good reason why a fee award is inappropriate in that case." *Friolo I*, 373 Md. at 518, 819 A.2d 354 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).[10]

## -ERISA

ERISA sets uniform federal standards for employer-sponsored benefit plans, including health and retirement plans. It was intended to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" and provide for "appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). ERISA reflects a policy choice that employee benefit plans be "operated under traditional trust principles" so as to protect employee interests in those plans. *Cent. States, Se., & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 n. 10, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). It applies concepts of trust law to the relationship between employer and employee in the context of an employee benefit plan. Individuals who administer and exercise control over a plan are fiduciaries, and typically

---

**10.** The parties and *amici* have debated at some length whether *Friolo I* established that there is a "presumption" that attorneys' fees should be awarded to a successful plaintiff in a case under the Wage Payment and Collection Law. (In its second opinion in this case, the Court of Special Appeals stated that there is no presumption in favor of an award. 206 Md.App. at 303–04, 47 A.3d 1097). In legal writing, the term "presumption" makes frequent appearances, often with quite different meanings. As one commentator has observed:

> No term has been more frequently or more variously defined. We read of presumptions of law, and presumptions of fact, mixed presumptions, accumulative, violent, mild, conclusive, conflicting, strong, and weak presumptions, until the whole subject seems an entanglement of definition and explanation, which leaves the mind in a hopeless state of bewilderment.

John J. McKelvey, A Handbook of the Law of Evidence § 53, at 114–15 (5th ed.1944). In our view, the use of the label "presumption" in this context is ultimately unhelpful and we decline to engage in a semantical exercise that can confuse rather than clarify. The statutory language— "*may* award the employee"—already indicates that trial courts have discretion to award fees when the statutory contingency (no "bona fide dispute") is satisfied. The plainly worded statement in *Friolo I* accurately captures the legislative purpose that favors exercising that discretion to award fees to a prevailing employee.

include the trustee, investment advisors, plan administrators, and those who select the plan administrators. *See* United States Department of Labor, *"Meeting Your Fiduciary Responsibilities,"* available at http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html. Accordingly, in resolving legal questions related to the statute, courts have looked to "the law of trusts that 'serves as ERISA's backdrop.' " *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* 555 U.S. 285, 294, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009) (quoting *Beck v. PACE Int'l Union,* 551 U.S. 96, 101, 127 S.Ct. 2310, 168 L.Ed.2d 1 (2007)).

ERISA allows federal courts to award attorneys' fees and other costs.[11] This is no doubt related to its roots in the law of trusts. Under general principles of trust law, trustees may recover attorneys' fees and costs from the fund or parties benefitting from the fund. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257–58, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Courts therefore award fees and costs on an equitable basis with a goal of protecting funds and their beneficiaries, *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), sometimes when the plaintiff does not achieve the desired relief but confers a benefit to the trust.[12]

*Operation of Fee–Shifting Provisions*

■ The different purposes of the two statutes are reflected in their fee-shifting provisions. Notably, the ERISA

---

**11.** The ERISA fee-shifting provision reads as follows:

In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
29 U.S.C. § 1132(g)(1).

**12.** *See, e.g., Dardovitch v. Haltzman,* 190 F.3d 125, 145–6 (3d Cir.1999); *Daniel v. White,* 272 S.C. 477, 252 S.E.2d 912, 914–5 (1979); *Hurley v. Noone,* 347 Mass. 182, 196 N.E.2d 905, 910 (1964); *In re Bittson's Trust,* 41 Misc.2d 5, 244 N.Y.S.2d 926, 931 (N.Y.Sup.Ct.1963); *In re Catell's Estate,* 38 A.2d 466 (Del.Ch.1944); *Old Colony Trust Co. v. Rodd,* 356 Mass. 584, 254 N.E.2d 886, 890 (1970); *Grein v. Cavano,* 61 Wash.2d 498, 379 P.2d 209, 214–16 (1963).

fee-shifting scheme allows fees to be awarded "to either party," 29 U.S.C. § 1132(g)(1), while the private right of action under the Wage Payment and Collection Law only authorizes a fee award to "the employee," LE § 3–507.2. The State statute therefore establishes, as a matter of public policy, that an employer is not to be awarded attorneys' fees against a claimant even if the employer prevails in the action. In contrast, ERISA's two-way shifting is intended to protect both benefit plans and their beneficiaries.

ERISA's two-way shifting recognizes that a plan's fiduciary may be obliged, under the statute, to take action against other fiduciaries when there is a breach of fiduciary duty, *see* 29 U.S.C. § 1105(a)(3), as well as against a beneficiary to recoup funds for the benefit of the other beneficiaries of the plan. *See, e.g., Sereboff v. Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). In ERISA litigation, two-way fee shifting is therefore potentially necessary to reach an equitable result that best protects the ERISA plan and its beneficiaries.

This is in contrast to the private right of action under the Wage Payment and Collection Law, which involves only litigation between an employee and an employer over the payment of wages. The five-factor ERISA fee-shifting test, developed from the principles of trust law, contemplates a broader range of circumstances and allows for awards to both plaintiffs and defendants.[13] One cannot assume that it is compatible with the fee-shifting scheme under the Wage Payment and Collection Law, which is intended only to benefit employees who have had wages withheld by an employer in bad faith.

It is thus necessary to consider the relevance of each of the ERISA factors on its own merits in the context of the Wage Payment and Collection Law.

---

**13.** In some circumstances, fees could potentially even be awarded in favor of a losing party. *See, e.g., Antolik v. Saks, Inc.,* 463 F.3d 796, 803 (8th Cir.2006) (describing as "an open issue" whether losing plaintiff could receive a fee award).

*Consideration of ERISA Factors in the Context of the Wage Payment and Collection Law*

Reference to some of the ERISA factors in a wage act case can lead to redundant or contradictory findings by the trial court, as is illustrated to some extent by this case. Other factors considered under ERISA were "baked into" the fee-shifting provision of the Wage Payment and Collection Law when it was created by the Legislature.

### Bad Faith

Under ERISA, a court is to consider the degree of each party's culpability or bad faith. But in a wage payment action, the factfinder—in this case, a jury—must find that there was "no bona fide dispute" justifying the employer's withholding of wages as a prerequisite to any consideration of an award of attorneys' fees. A finding of no "bona fide dispute" is essentially a finding that the defendant acted in bad faith.[14] Once a jury reaches this conclusion, the judge considering an award of fees does not have discretion to decide otherwise. *Programmers' Consortium, Inc. v. Clark*, 409 Md. 548, 564, 976 A.2d 290 (2009).

### Ability to Pay an Award

The second factor considered under ERISA is "the ability of opposing parties to satisfy an award …" *Quesinberry*, 987 F.2d at 1029. The Chamber argues that, whether other ERISA factors are applicable here, its ability to pay the requested fees was properly considered by the trial court. Both parties cite numerous examples of federal statutes other than ERISA in which the ability to pay is considered or expressly ignored by a court in weighing a request for fees. For example, federal courts appear to disagree as to whether

---

**14.** The Latin phrase *bona fide* translates as "good faith." By definition, the absence of a "good faith" means that the wages were withheld without an innocent intent, although it does not necessarily equate to fraud or deceit. *See Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 541–43, 745 A.2d 1026 (2000).

inability to pay is properly considered in the fee-shifting analysis under 42 U.S.C. § 1988.[15] As for the other statutes cited by the parties, neither side undertakes the task of explaining how they are sufficiently similar to the Wage Payment and Collection Law in purpose and operation such that their suggested analogies are appropriate. However instructive that might have been, our task is to decide whether such a factor is pertinent, given the history and policy of the Wage Payment and Collection Law. In our view, the defendant's ability to pay is not relevant to whether attorneys' fees should be awarded in wage cases.

In some contexts, a defendant's ability to pay is an important factor in a court's review of a jury's decision to award *punitive* damages. *See, e.g., Bowden v. Caldor,* 350 Md. 4, 28, 710 A.2d 267 (1998) (the "amount of punitive damages 'should not be disproportionate to . . . the defendant's ability to pay' ") (internal citations removed). However, an award of attorneys' fees and costs in a wage claim action is "remedial" rather than punitive. *Friolo I,* 373 Md. at 517, 819 A.2d 354; *Friolo III,* 403 Md. at 457–58, 942 A.2d 1242. Therefore, the focus is not on whether the defendant is penalized by the award, but whether the harm to the *plaintiff* is remedied. Denying an award of fees based on the defendant ability to pay is inconsistent with the statutory goal of making the plaintiff whole. Whether a court may take into account a defendant's financial health in determining the *amount* of an award is a question that is not before us in the posture of this case.

---

15. Some courts hold that a defendant's ability to pay must be considered in determining whether to award attorneys' fees to a successful plaintiff. *See Baker v. Alderman,* 158 F.3d 516, 528 (11th Cir.1998); *Mariani v. Banat Realty,* 1993 WL 86530 (E.D.N.Y.1993); *Vulcan Soc'y of Westchester Cnty., Inc. v. Fire Dep't of the City of White Plains,* 533 F.Supp. 1054, 1060 (S.D.N.Y.1982). Other courts have held to the contrary. *See Simpson v. Sheahan,* 104 F.3d 998, 1003 (7th Cir.1997); *Inmates of the Allegheny Cnty. Jail v. Pierce,* 716 F.2d 177, 180 (3d Cir.1983); *Entm't Concepts, Inc., III v. Maciejewski,* 631 F.2d 497, 507 (7th Cir.1980); *Coppedge v. Franklin Cnty. Bd. of Ed.,* 345 F.Supp.2d 567, 570 (2004); *Sharrock v. Harris,* 489 F.Supp. 913, 915 (S.D.N.Y. 1980); *NAACP, Frederick Cnty. Chapter v. Thompson,* 671 F.Supp. 1051, 1054 (D.Md.1987).

*Deterrent Effect*

In ERISA cases, federal courts consider "whether an award of attorneys' fees against the opposing parties would deter *other persons acting under similar circumstances.*" *Quesinberry,* 987 F.2d at 1029 (emphasis added). This factor calls for an analysis of the general deterrent effect of a fee award.[16] In the context of the Wage Payment and Collection Law, the General Assembly has already conducted this analysis, as the attorneys' fee provision is part of general deterrence of unlawful wage withholding by employers. *Cf. Friolo I,* 373 Md. at 518, 819 A.2d 354 ("the provision for counsel fees [in the closely-related Wage and Hour Act] is an important element in ensuring that the law is obeyed"). There is no need for a trial court to reconsider this factor in an individual case under that law.

*Application Beyond Individual Case*

A fourth ERISA factor is "whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself." *Quesinberry,* 987 F.2d at 1029. The trial court adapted this ERISA factor by considering whether Mr. Barufaldi's lawsuit had an impact beyond the specific facts of the case. As a practical matter, use of this factor would argue against an award of fees in many cases under the Wage Payment and Collection Law, which may pertain only to the employment terms of the individual plaintiff. Unlike ERISA litigation, which will generally involve a benefit plan that applies to many employees, wage cases may be limited to the facts of an individual worker's employment.[17]

---

16. "General deterrence" is to be contrasted with "specific deterrence" (or "special deterrence"). The former is targeted "at society more generally, or at those similarly situated as the defendant who might engage in similar conduct if not deterred by the penalty imposed on the defendant" while the latter is "targeted at the defendant alone." 1 Stein on Personal Injury Damages § 4.4 (3d ed.).

17. Similarly, in fee-shifting under 42 U.S.C. § 1988, it is improper to deny an award on the basis that only the plaintiff was personally

In any event, the Legislature has already made a judgment that a fee award for a successful plaintiff in a wage payment case in which there was "no bona fide dispute" as to the plaintiff's entitlement to the withheld wages benefits the public by discouraging such conduct in the future by other employers. This is consistent with the general principle that fee-shifting provisions accompany statutory causes of action "addressed to an area of public interest or concern[.]" *Montgomery v. E. Corr. Inst.*, 377 Md. 615, 637, 835 A.2d 169 (2003).

*Relative Merits*

The fifth factor considered by courts in awarding fees under ERISA is the "relative merits of the parties' positions." *Quesinberry*, 987 F.2d at 1029. In the context of a motion for attorneys' fees and costs in a wage payment action, the factfinder has already found the plaintiff employee's claim to be meritorious and that the defendant employer was not acting in good faith when it withheld the wages. The factfinder—in this case, the jury—has already assessed the relative merits of the parties' positions and a trial court finding in the employer's favor on this factor contradicts that decision. Further consideration of this factor at this stage of the proceeding is at odds with the notion that discretion should be exercised "liberally" in favor of awarding fees. Accordingly, this factor is ill-suited to the context of a claim under the Wage Payment and Collection Law.

*Potentially "Good Reasons" Not to Make a Fee Award*

In an effort to illustrate what might be a proper reason to forgo a fee award—though not necessarily one that would apply to this case—the Court of Special Appeals identified in a footnote two reasons why a trial court might exercise its discretion to deny an award in a particular case: "the claimant's misconduct or rejection of a settlement offer more favorable than the judgment obtained." 206 Md.App. at 308 n.

---

benefitted rather than the public at large. *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 744 (9th Cir.1989); *Ackerley Commc'ns, Inc. v. City of Salem, Ore.*, 752 F.2d 1394, 1397–98 (9th Cir.1985).

13, 47 A.3d 1097. These examples are more pertinent than the ERISA factors, and likely do not exhaust the universe of reasons that may counsel against an award of fees in a particular case. Because the parties have addressed the merits of these factors, we comment briefly although we do not mean to imply that either necessarily has application to this case.

As noted above, the legislation that enacted LE § 3–507.2 was the result of a compromise. Opponents were concerned that, given an assurance that a losing defendant would pay legal fees and costs, "unscrupulous" attorneys would pursue litigation even where the expected recovery "was the same amount that was offered by the employer and rejected by the employee." In response, the bill was modified to make the award of fees discretionary rather than mandatory. It is thus evident that the General Assembly intended to provide a trial court with the discretion to deny a fee award when a defendant promptly made a good faith settlement offer to pay withheld wages, but a plaintiff continued the litigation to obtain additional fees and costs beyond those incurred to the time of the settlement offer.[18]

We do not rule out plaintiff "misconduct" as a basis for a trial court to forgo or reduce a fee award, but decline to speculate on the circumstances that might justify such a conclusion. In any event, the misconduct would have to be significant in light of the statutory purpose that the trial court should exercise its discretion liberally in favor of making an award.

## Conclusion

Despite some similarities, ERISA and the Wage Payment and Collection Law serve distinct purposes, and their fee-shifting provisions are based on different principles. Accord-

---

18. In this regard, a trial court might well distinguish between an employer that realizes early on that it has no good faith basis to withhold wages and attempts to settle, as opposed to an employer that resists payment and only offers a settlement on the eve of trial.

ingly, a trial court should not employ the five-factor ERISA fee-shifting test in deciding whether to award attorneys' fees and costs under the State statute. Because the trial court's denial of an award of attorneys' fees and costs was based on factors inappropriate to this case, this case will be remanded to the Circuit Court for further consideration of Mr. Barufaldi's motion.[19]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER..

---

**19.** If the Circuit Court finds that there is no good reason to deny an award, it should proceed to determine an appropriate award, using the lodestar analysis. *Friolo I,* 373 Md. at 529, 819 A.2d 354. We note that no court has yet assessed the reasonableness of Mr. Barufaldi's request for fees under that analysis and express no opinion on that issue.