*Joseph F. Cunningham, et al., v. Matthew Feinberg*, No. 27, September Term, 2014

**Labor & Employment—Maryland Wage Payment and Collection Law—*Lex Loci Contractus***

Wage claims arising from employment entered into in states other than Maryland are not excluded, for that reason alone, from being litigated under the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Employment, §§ 3-501 *et. seq.* The doctrine of *lex loci contractus* is not implicated, in the absence of an express choice of law selection in the contract, when the litigation of such claims does not involve the validity, enforceability, interpretation, or construction of the employment contract. Even if *lex loci contractus* applied to such claims of unpaid wages, it is likely that the MWPCL represents Maryland's strong public policy regarding employees' wage claims and therefore comes within a recognized exception to the *lex loci contractus* doctrine.

IN THE COURT OF APPEALS OF
MARYLAND

No. 27

September Term, 2014

JOSEPH F. CUNNINGHAM, ET AL.

v.

MATTHEW FEINBERG

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Opinion by Harrell, J.
Adkins, J., concurs.

Filed: January 27, 2015

In this relatively contentious dispute between a young lawyer associate and his former law firm employer over a small amount of allegedly unpaid wages, a medium amount of treble damages, and a large amount of attorney's fees, we are called on to consider the intersection between a fairly complex choice of law doctrine and a fairly straightforward portion of Maryland's Labor and Employment statute. We hold that unpaid wage claims arising from employment entered into in states other than Maryland are not excluded, for that reason alone, from being litigated under the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Employment, §§ 3-501 *et. seq.* The choice of law doctrine *lex loci contractus* is not implicated, in the absence of an express choice of law selection in the contract, when such claims do not involve the validity, enforceability, interpretation, or construction of the employment contract. We suggest further that the MWPCL represents Maryland's strong public policy. Final resolution of the parties' dispute must await, however, another day in court.

## I. STATEMENT OF THE CASE, NUMEROUS ALLEGATIONS, AND ONE FACT

Matthew Feinberg, Esq. ("Feinberg"), filed on 4 October 2012 a Complaint in the District Court of Maryland, sitting in Montgomery County, against Cunningham & Associates, P.L.C. ("C&A"), a Virginia-based law firm, and its principal, Joseph F. Cunningham ("Cunningham").[1] Although the Complaint set out four counts, only one survives here: Feinberg's claimed violation by C&A and Cunningham of the Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code (1999, 2008 Repl.

[1] C&A and Cunningham are referred to sometimes hereafter collectively as "Petitioners."

Vol.), Labor & Employment, §§ 3-501 *et. seq.*,[2] for which he seeks $1,974.20 in unpaid wages, treble damages, attorney's fees, and costs.[3,4]

Feinberg was the only witness to testify at the 17 April 2013 trial in the District Court. He told the Court of his application for an attorney position with C&A, the interview process, and his initial understanding of the terms of his employment. Feinberg suggested that he was hired by C&A to serve as a Maryland attorney, handle Maryland cases, appear before Maryland courts, and advise Maryland clients. He recounted signing a written agreement ("Agreement") with Cunningham wherein his position was described as that of an "independent contractor," although he could not recall specifically where geographically he signed the agreement. He spoke about his day-to-day practice, work environment, and responsibilities, including Cunningham's requirement that he spend the vast majority of his time in C&A's Virginia office. Feinberg testified that his work for Petitioners included representing clients at trial and motions hearings, attending depositions, meeting with clients, and gaining admission to the U.S. District Court, all in Maryland. As might be expected in a wage claim case, a substantial portion of Feinberg's testimony was devoted to the manner in which he was paid by C&A and

---

[2] Unless otherwise provided, all statutory references are to Maryland Code.

[3] The additional counts set out in his Complaint were for Fraud (Intentional Misrepresentation), Quantum Meruit, and Unjust Enrichment, seeking collectively the unpaid wages as well as reimbursement for taxes paid in the amount of $8,620.81, plus interest.

[4] The District Court granted preliminarily Petitioners' motion to dismiss, on the basis of federal preemption, the claims for tax reimbursement.

2

monies that he claimed were withheld improperly from his paychecks on various occasions. The Agreement that Feinberg signed with Cunningham was produced. The portions of the contract relevant potentially to the payment of wages are as follows:

> That in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, it is hereby mutually agreed . . . :
>
> . . .
>
> 5. Contractor invoices will be submitted bi-weekly.
>
> . . .
>
> 7. The Contractor will determine the amount of hourly time expended on work assigned to be undertaken.
> 8. The Contractor's earnings will depend solely on his/her own production.[5]

Feinberg also discussed several instances when he disputed with Cunningham particular withholdings.

At the close of Feinberg's case-in-chief, Petitioners moved to dismiss the remaining wage claims on two grounds: first, no claim could lie on an implied contract theory, such as quantum meruit or unjust enrichment, as there was an express contract between the parties; and, second, the parties' contract was governed, under Maryland's choice of law principles, by Virginia's law, and, as such, the MWPCL did not apply.[6]

---

[5] It remains a mystery why the Agreement provided no salary amount or arithmetical means to calculate same.

[6] We understand Petitioners' argument in support of their motion to dismiss to be that the Agreement between the parties was a "Virginia" contract, and that, in light of choice of law principles, the substantive law of Virginia should be applied. There being no private

(Continued…)

3

After hearing arguments from both sides, the District Court granted Petitioners' motion. Ruling from the bench, the judge found the following facts in support of his ruling:

> [T]he testimony in this case began by Mr. Feinberg describing his applying for this job, seeing this ad and applying with [C&A]. And he submitted his resume[;] he then goes to Virginia where he meets with [Cunningham].
>
> . . . They signed this contract. I think it's a Virginia contract.
>
> . . . I understand Mr. Feinberg has an office in Bethesda. . . . And he was living in D.C. . . . [A]fter he left [C&A] he moved to Gaithersburg where he got a couple checks. And then he moved back to D.C.

The trial judge's ruling turned on one fact: the employment contract was a "Virginia" contract. In his view, because the Agreement between Feinberg and C&A was an employment contract entered in Virginia, and not in Maryland, the court held that the MWPCL did not apply, and the contract was governed instead by Virginia law. Furthermore, the District Court did not identify a strong public policy basis to apply the MWPCL to Feinberg's claims.[7] Accordingly, the District Court did not find any facts in

---

(…continued)

right of action for unpaid wage claims under Virginia's version of a wage claim statute, Maryland courts may not entertain Feinberg's unpaid wages claim. We do not understand Petitioners' motion to dismiss to challenge either the Maryland courts' personal or fundamental jurisdiction in this matter.

[7] Specifically, the Court reasoned:

> I agree that for the Maryland statute there's no public policy exception from the Maryland Labor and Employment statute that requires this to be here. . . .
>
> . . .

(Continued…)

4

addition to the one that was—in its view—dispositive.[8]  The court noted that the dismissal was without prejudice, in order to preserve any potential causes of action that Feinberg may have in Virginia.

Feinberg filed a Motion to Alter or Amend Judgment and/or for Reconsideration regarding his MWPCL claim.  He relied on *Himes Associates, Ltd. v. Anderson*, 178 Md. App. 504, 943 A.2d 30 (2008), which he suggested was controlling appellate precedent.[9]  In that case, the plaintiff, employed by a Virginia company, worked primarily from a Virginia office, but performed certain work in Maryland.  *Himes*, 178 Md. App. at 513–16, 943 A.2d at 35–36.  The intermediate appellate court held that Anderson could bring a suit in Maryland under the MWPCL.  *Himes*, 178 Md. App. at 535, 943 A.2d at 48.  Feinberg argued that he was actually C&A's employee, not an independent contractor, and as such that he was entitled to the unpaid wages, treble damages, and attorney's fees and costs.  His motion was denied.

Feinberg appealed, on the record, to the Circuit Court for Montgomery County.  *See* Maryland Rule 7-102(b)(1).  The parties submitted on memoranda.  Feinberg

---

(…continued)

> . . . I don't find in this case that this is a Maryland employment contract [but] find that this [is] a Virginia employment contract, [so] choice of law should be Virginia. I'll adopt the argument of the defense. . . .

[8] The judge did not reach the merits of the matter or decide any further issues relevant to the MWPCL claim, including whether Feinberg was an independent contractor or an employee or whether there was a bona fide dispute over the withheld wages.

[9] It appears that the District Court was not directed to this case at trial.

5

reiterated his argument that *Himes* controlled, that the District Court erred in granting Petitioners' Motion to Dismiss Feinberg's MWPCL claim, and further argued that the evidence at trial indicated that there was a violation of the MWPCL. Petitioners, in their written response, argued that the doctrine of *lex loci contractus* required that Feinberg's claims be resolved under Virginia law. Petitioners relied on several federal cases for the proposition that the MWPCL did not reflect any fundamental public policy of Maryland so as to supersede traditional conflict of laws principles. Petitioners argued, in the alternative, that if the MWPCL claim was dismissed improperly below, the case should be remanded for further fact-finding. Feinberg, in his reply, argued *inter alia* that *lex loci contractus* did not apply to his wage claims.

The Circuit Court reversed the dismissal of Feinberg's MWPCL claim and remanded the matter for further proceedings. That court did not disturb the District Court's factual finding that the employment contract was a "Virginia" contract, but reasoned that *Himes* controlled, suggesting that Feinberg could recover under the MWPCL. The Circuit Court declined to determine whether Feinberg was indeed an employee of C&A or whether there was a bona fide dispute as to the wages claimed, but instead left those issues to the District Court on remand.[10]

---

[10] At the end of its Order, the Circuit Court directed that the matter be remanded to the District Court with instructions to enter a finding that the Defendant was subject to liability under the MWPCL, and for further findings in accordance with the court's instructions. Based on the lengthy discussion in the body of the opinion, however, it appears that the Circuit Court meant to leave that determination to the District Court, after the trial court decided the remaining and dispositive factual questions.

We granted C&A's and Cunningham's Petition for Writ of Certiorari. 437 Md. 66, 85 A.3d 156 (2014). Petitioners posed the following two questions:

1. Does application of the Md. choice of law principle of *lex loci contractus* preclude a claim under the Md. Wage Payment and Collection Law (MD. Code Ann. Lab. & Empl. § 3-501 et seq. ("MWPCL"))?

2. Does proper application of *lex loci contractus* preclude respondent's MWPCL claim?

Petitioners urge us to address squarely the interface between the reach of the MWPCL and the common law choice of law principle *lex loci contractus*. They argue that choice of law principles require the parties' dispute over unpaid wages be settled under Virginia law in the appropriate forum, rather than under the MWPCL, because the contract was a "Virginia" contract. In support of their argument, Petitioners marshal several federal cases decided by the U.S. District Court for the District of Maryland and the U.S. Court of Appeals for the Fourth Circuit to suggest that disputes in Maryland's courts over employment contracts entered into in other states should be resolved according to the law of those other states, unless the other state's law runs contrary to a *strong* Maryland public policy. Specifically, Petitioners argue that Virginia's relevant statutory law is a substantive part of the parties' contract, and therefore choice of law principles are implicated. Petitioners further assert that the MWPCL does not represent a strong public policy of Maryland, and that *lex loci contractus* should not be abandoned in favor of a more "modern" approach.

Feinberg reiterates the arguments made in the trial courts, and suggests further that the Circuit Court declined correctly to apply *lex loci contractus* to the present litigation

7

because that doctrine only applies to questions of validity or interpretation of a contract. He argues also that, even if *lex loci contractus* does apply, the MWPCL represents a strong public policy which should override the application of that doctrine to the case at bar, and this Court should ignore selectively the doctrine in favor of a more modern approach favoring his position.

We hold that the matter before us does not implicate the choice of law doctrine of *lex loci contractus*. In a nifty bit of considered dicta, even if *lex loci contractus* applied, we think that it would not preclude a claim such as Respondent's under the MWPCL, as the MWPCL represents a strong public policy of Maryland.

## II. STANDARD OF REVIEW

The rules of procedure governing appeals to a circuit court on the record made in the District Court "are not as comprehensive as those governing appeals to the Court of Special Appeals or to [the Court of Appeals], [but] we have said that the ordinary rules governing the scope of appellate review in the latter courts are generally applicable to appeals on the record in a circuit court." *Atlantic Mut. Ins. Co. v. Kenney*, 323 Md. 116, 122, 591 A.2d 507, 509–10 (1991) (citing *Ryan v. Thurston*, 276 Md. 390, 391–93, 347 A.2d 834, 835–36 (1975)). For purposes of this appeal, the parties have treated the trial court's decision as an "[a]ction [t]ried [w]ithout a [j]ury" pursuant to Maryland Rule 8-131. Under this rule, the appellate court must "review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of witnesses." Md. Rule 8-131(c). Appellate courts "'accept and [are]

8

bound by findings of fact in the lower court unless they are clearly erroneous.'" *State Sec. Check Cashing, Inc. v. American General Financial Services (DE)*, 409 Md. 81, 110, 972 A.2d 882, 899 (2009) (quoting *$3,417.46 U.S. Money v. Kinnamon*, 326 Md. 141, 149, 604 A.2d 64, 67 (1992)). We review the trial court's application of law to the facts for legal error, a non-deferential standard. *State Sec. Check Cashing, Inc.*, 409 Md. at 111, 972 A.2d at 899. We review also without deference the trial court's pure conclusions of law. *Id.* Under this standard, the lower court's interpretations of law "enjoy no presumption of correctness on review: the appellate court must apply the law as it understands it to be." *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 447 n.2, 505 A.2d 113, 115 n.2 (1986).

### III. DISCUSSION

*A. The Underlying Cause of Action:*
*The Maryland Wage Payment and Collection Law*

Maryland allows employees to recover wages withheld unlawfully from them by their employers under two statutes: the Maryland Wage Payment and Collection Law ("MWPCL") and the Maryland Wage and Hour Law ("MWHL"). *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 652–53, 97 A.3d 621, 624–25 (2014). The MWHL provides a minimum wage standard, *id.*, and the MWPCL "sets certain standards for the frequency and methods of compensation, permissible deductions from pay, and notification of employees about the details of pay and changes in the amount or method of payment." *Ocean City, Md., Chamber of Commerce, Inc. v. Barufaldi*, 434 Md. 381, 385, 75 A.3d 952, 954 (2013). The MWPCL is a statutory cause of action, the purpose of

9

which is "to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages." *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 364, 658 A.2d 680, 686 (1995); *see Barufaldi*, 434 Md. at 384, 75 A.3d at 954.

We have had occasion to examine in detail the development of the MWPCL and its fee-shifting provision. *See Friolo v. Frankel*, 373 Md. 501, 515–18, 819 A.2d 354, 362–64 (2003); *Barufaldi*, 434 Md. at 391–94, 75 A.3d at 958–59. We note here only a few highlights of that history. The precursor to the MWPCL was enacted in 1966, but did not provide originally for a direct private action against an employer for a violation of its provisions. *Marshall v. Safeway, Inc.*, 437 Md. 542, 559, 88 A.3d 735, 744–45 (2014). After the elimination of the unit within the office of the Commissioner of Labor and Industry responsible for prosecuting such civil actions, the General Assembly added a private right of action to "provide a meaningful remedy to the harm flowing from the refusal of employers to pay wages lawfully due . . . ." *Marshall*, 437 Md. at 562, 88 A.3d at 746; *see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 380–83, 780 A.2d 303, 311–13 (2001). The private cause of action was also designed to be "an incentive for employers to pay[] back wages," *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002) (quotations omitted), and to "ensure that an employee will have the assistance of competent counsel in pursuing what is likely to be a relatively small claim." *Barufaldi*, 434 Md. at 393, 75 A.3d at 959.

10

Although the distinction has not been material heretofore in the reasoning in our MWPCL cases,[11] various federal courts have struggled to identify whether the private cause of action under the MWPCL is a contract-based, tort-based, or statute-based cause of action. Choice of law questions have been important for federal courts exercising their supplemental jurisdiction over various state law claims and wielding choice of law doctrines. *See Yeibyo v. E-Park of DC, Inc.*, No. DKC 2007-1919, 2008 WL 182502, at *4 (D. Md. Jan. 18, 2008).[12] In *Yeibyo*, attempting to determine whether the MWPCL or MWHL applied to the case, the hearing judge endeavored to follow our advice in *Erie Insurance Exchange v. Heffernan*:

> Generally, in a conflict-of-laws situation, a court must determine at the outset the nature of the problem presented to it for solution, specifically, if it relates to torts, contracts, property, or some other field, or to a matter of substance or procedure.

*Yeibyo*, 2008 WL 182502, at *4–5 (quoting *Erie Insurance Exchange v. Heffernan*, 399 Md. 598, 615, 925 A.2d 636, 646 (2007)). The *Yeibyo* court could not determine

---

[11] In *Montrose Christian School Corp. v. Walsh*, we noted that "actions for damages based on the termination of employment relationships, including those regulated by statutes, ordinarily sound in contract and not in tort." 363 Md. 565, 582–83, 770 A.2d 111, 121 (2001). In that case and in the cases cited therein for that proposition, we did not have cause to discuss either the MWHL or the MWPCL, but focused simply on contract-based actions. *But see Chappell v. Southern Maryland Hospital, Inc.*, 320 Md. 483, 578 A.2d 766 (1990) (holding that a tort claim for abusive discharge was precluded by the existence of statutory federal and state remedies for discharge of an employee, but not determining whether the MWHL sounded in contract or tort).

[12] We do not mention this case as a precedential or even persuasive authority, but to illustrate (as it does so well) the manner in which various federal judges and courts have wrestled with the nexus between conflict of laws principles and the MWPCL.

conclusively if it should follow *lex loci delicti* (if the MWPCL claim sounded in tort) or *lex loci contractus* (if the MWPCL claim sounded in contract) with regard to the MWPCL claim, but supposed that MWPCL claims sounded likely in contract as "employment relationships are paradigmatically contractual in nature." *Yeibyo*, 2008 WL 182502, at \*4; *see Blanch v. Chubb & Son, Inc.*, No. CCB-12-1965, 2014 WL 3421534, at \*2 n.4 (D. Md. Jul. 10, 2014) (noting that MWPCL claims "must have a contractual predicate").[13] The *Yeibyo* court concluded ultimately that Maryland courts would apply likely the law of the District of Columbia in either circumstance based on the facts of the case and the MWPCL claim was dismissed ultimately. *Yeibyo*, 2008 WL 182502, at \*5–6. A federal district court in New York also attempted in *Arakelian v. Omnicare, Inc.*, to determine whether MWPCL claims sound in contract or tort. 735 F. Supp. 2d 22, 37 (S.D.N.Y. 2010). Reviewing Maryland and federal case law, the *Arakelian* court observed that "[i]t is not entirely clear whether claims under Section 3–507.1(b) of the [MWPCL] sound in contract or tort," but concluded, similar to the *Yeibyo* court, that the MWPCL would not apply under New York's choice of law rules as the forum state. *Arakelian*, 735 F. Supp. 2d at 38.

The MWPCL makes available a cause of action to jilted employees. The causes of action under the MWPCL, like those available under the Maryland's Workers' Compensation Act, are remedial in nature, in that both provide a remedy to employees who are attempting to collect lost wages. *See Johnson v. Mayor and City Council of*

---

[13] *See supra* note 12.

*Baltimore*, 430 Md. 368, 377, 61 A.3d 33, 38 (2013) ("'[W]e recognize that the [Workers' Compensation] Act is a remedial statute.'" (citing *Montgomery County v. Deibler*, 423 Md. 54, 61, 31 A.3d 191, 195 (2011))).[14]   Although the cause of action assumes the existence of some sort of underlying contract, it does not sound *per se* in contract.   A MWPCL claim does not require necessarily analysis of the parties' underlying contract, nor does an action under the MWPCL require that a breach of contract action be pursued contemporaneously.   Instead, a MWPCL action may be an independent, stand-alone claim.

> B.      *The Proper Application of* Lex Loci Contractus

Maryland has recognized the common law doctrine of *lex loci contractus* since at least 1807.  *See De Sobry v. De Laistre*, 2 H. & J. 191, 191 (Md. 1807).   This doctrine requires that, when determining the construction, validity, enforceability, or interpretation

---

[14] As noted above, at the beginning of *Johnson* we observed that the Workers' Compensation Act is remedial in nature.   *Johnson v. Mayor and City Council of Baltimore*, 430 Md. 368, 377, 61 A.3d 33, 38 (2013).   In that matter, we were asked to determine whether an amendment to the Worker's Compensation Act providing for certain benefits to dependents applied retrospectively or prospectively.   *Johnson*, 430 Md. at 373, 61 A.3d at 35.   As a part of our analysis, we recognized that whether a statute applied to future cases was determined by consideration of four basic principles: (1) the presumption that statutes operate prospectively, (2) statutes governing procedure or remedy will be applied to cases pending when the statute becomes effective, (3) statutes are given retroactive effect if that is what the Legislature intended, and (4) despite legislative intent, statutes will not be applied retroactively if doing so would impair vested rights, deny due process, or violate the prohibition on *ex post facto* laws.   *Johnson*, 430 Md. at 381–82, 61 A.3d at 40–41.   In light of those questions, we considered whether the particular amendment was a procedural or remedial change, or a substantive one, *Johnson*, 430 Md. at 382, 61 A.3d at 41, and decided ultimately that it was a substantive change to a remedial statute.   *Johnson*, 430 Md. at 395, 61 A.3d at 48; *see Johnson*, 430 Md. at 392 n.16, 61 A.3d at 47 n.16.

13

of a contract, we apply the law of the jurisdiction where the contract was made. *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011) ("When determining which law controls the enforceability and construction of a contract, we apply *lex loci contractus*."); *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 570, 659 A.2d 1295, 1300 (1995) ("[T]he construction and validity of a contract [must] be determined by the law of the place of making of the contract."); *Ward v. Nationwide Mut. Auto. Ins. Co.*, 328 Md. 240, 246–47, 614 A.2d 85, 88 (1992) ("[I]n deciding questions of interpretation and enforceability of contract provisions, a Maryland court ordinarily should apply the law of the jurisdiction where the contract was made. This choice of law principle is referred to as *lex loci contractus*."); *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529, 611 A.2d 100, 101 (1992); *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988); *Bethlehem Steel Corp. v. G.C. Zarnas and Co.*, 304 Md. 183, 188, 498 A.2d 605, 607 (1985). If the contract contains a choice of law provision, we apply generally the law of the specified jurisdiction. *ARTRA Group, Inc.*, 338 Md. at 573, 659 A.2d at 1301.

We have deployed the doctrine of *lex loci contractus* when interpreting many kinds of contracts, but most frequently where insurance contracts were at issue. In *ARTRA Group, Inc.*, we turned to *lex loci contractus* when considering the validity and interpretation of a pollution exclusion clause in an insurance contract. 338 Md. at 565–66, 659 A.2d at 1297. In *Ward*, we relied on the doctrine to interpret a personal injury protection benefits provision of an automobile insurance contract. 328 Md. at 242, 614 A.2d at 85. We have referred also to *lex loci contractus* when determining whether a

14

California marriage contract was valid,[15] *Port v. Cowan*, 426 Md. 435, 444–45, 44 A.3d 970, 975–76 (2012); *see also Hanon v. State*, 63 Md. 123, 128–29 (1885) (determining validity of a marriage contract), and when interpreting the damages clause of a contract. *Traylor v. Grafton*, 273 Md. 649, 651–59, 332 A.2d 651, 654–59 (1975). In each of the cases in which we applied *lex loci contractus*, either the validity or enforceability of a contract were challenged,[16] or the interpretation or construction of some term or phrase was disputed.[17]

---

[15] In that matter, we used the phrase *lex loci celebrationis* in applying the law of the place where the marriage contract was formed. *Port v. Cowan*, 426 Md. 435, 444–45, 44 A.3d 970, 975–76 (2012). *Lex loci celebrationis* is thought of as a sub-set of the *lex loci contractus* doctrine. *Id.*

[16] *See, e.g.*, *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 616, 921 A.2d 799, 802 (2007) (determining validity of an unsigned credit card agreement); *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 388, 535 A.2d 466, 466 (1988) (determining enforceability of a gambling contract); *Bethlehem Steel Corp. v. G.C. Zarnas & Co.*, 304 Md. 183, 188, 498 A.2d 605, 607 (1985) (determining validity of an indemnity provision in a contract); *Union Trust Co. v. Knabe*, 122 Md. 584, 89 A. 1106 (1914) (noting a question as to the validity of a guaranty); *Latrobe v. Winans*, 89 Md. 636, 43 A. 829 (1899) (determining validity of a contract provision allowing for the accrual of interest); *Stewart v. Garrett*, 65 Md. 289, 4 A. 399 (1886) (determining validity of a contract for gambling transactions); *Baker v. Wainwright*, 36 Md. 336, 339 (1886) (noting validity of a contract in consideration of statute of frauds defense); *Lyons v. Orange, A. & M.R. Co.*, 32 Md. 18, 24 (1870) (determining validity of a contract in consideration of statute of frauds); *Baltimore & O.R. Co. v. Glenn*, 28 Md. 287, 321 (1868) (determining validity of deed of trust); *Smith v. McAtee*, 27 Md. 420, 429–30 (1867) (determining validity of a devise conferring real property benefit); *Harrison v. State to Use of Harrison*, 22 Md. 468, 472, 479 (1864) (determining validity of marriage contract); *N. Cent. Co. v. Scholl*, 16 Md. 331, 342–43 (1860) (determining validity and interpretation of an agency contract between two railway companies involved in a slave's escape); *Wilson v. Carson*, 12 Md. 54, 54, 70 (1858) (determining validity of deed for transfer of personal property); *Green v. Trieber*, 3 Md. 11, 27–35 (1852) (discussing validity of deed of mortgage); *Dakin v. Pomeroy*, 9 Gill 1, 6 (Md. 1850) (determining validity of assignment to assert cause of

(Continued…)

*Lex loci contractus* is not implicated in *all* contract-related disputes. In *Erie Insurance Exchange*, where an uninsured/underinsured motorist coverage provision was at issue, we applied *lex loci delicti*, rather than *lex loci contractus*, because the contract referred to substantive tort law by its terms.[18] 399 Md. at 619–20, 925 A.2d at 648. In *Barber v. Eastern Karting Co.*, the Court of Special Appeals recognized that *lex loci contractus* should be used to determine the meaning and enforceability of a contract, while *lex loci delicti* should be used in determining substantive tort law principles. 108 Md. App. 659, 672, 673 A.2d 744, 751 (1996).

In the present case, the Agreement between the parties contains no choice of law provision. As the parties did not determine for themselves a jurisdiction's law to apply,

<hr>

(…continued)
action); *McCall v. Hinkley*, 4 Gill 128, 135, 146 (Md. 1846) (determining validity of assignment to creditors).

[17] *See, e.g.*, *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529–30, 611 A.2d 100, 100–01 (1992) (interpreting a policy exclusion in an insurance contract); *Kronovet v. Lipchin*, 288 Md. 30, 42, 415 A.2d 1096, 1103 (1980) (interpreting a contract to determine whether a contract interest rate was usurious); *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 66, 215 A.2d 467, 471 (1965) (determining the proper construction and interpretation of an insurance policy exclusion); *Eastwood v. Kennedy*, 44 Md. 563, 567 (1876) (interpreting whether a contract's interest rate was usurious); *Cornish v. Willson*, 6 Gill. 299, 340 (Md. 1848) (interpreting and constructing a will instructing an executor to free slaves after the payment of debts); *Trasher v. Everhart*, 3 G. & J. 234, 234–36 (Md. 1831) (interpreting a contract to determine if the document was a "single bill" or a "promissory note" for the purposes of debt collection).

[18] The meaning of the contractual phrase "entitled to recover" was in dispute. We decided that this dispute was not one of interpretation, but rather, that the phrase "references tort law, [and] the substantive tort law of where the accident occurred applies, generally, to the issues of fault and damages." *Erie Ins. Exchange v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 649 (2007).

16

should there be a dispute over the validity and enforceability of the contract, we would apply Virginia law as determined by *lex loci contractus*. Similarly, if there was a dispute over the construction or interpretation of one of the express terms or provisions of the contract, we would apply Virginia law under *lex loci contractus*. In this case, however, neither party disputes the validity or enforceability of the contract. The contract contains no express terms regarding what Feinberg was to be paid, or for which services. The contract is silent largely as to the recovery of unpaid wages, providing only that "Contractor invoices will be submitted bi-weekly," "[t]he Contractor will determine the amount of hourly time expended on work assigned to be undertaken," and "[t]he Contractor's earnings will depend solely on his/her own production." There is nothing in the Agreement relevant expressly to the payment of wages to interpret or enforce. The Agreement does not even contain Feinberg's hourly rate. No party has asked us to interpret or construct an express term of the Agreement. The doctrine of *lex loci contractus*, accordingly, does not apply to Feinberg's unpaid wages claim.

Petitioners suggest that there are certain implied terms added to the parties' contract that implicate *lex loci contractus*. Petitioners note that, when constructing contracts, relevant statutory requirements and standards are as much a part of a Virginia contract as if incorporated expressly by reference therein. They cite Virginia and federal cases in support of this assertion.[19] Specifically, they draw our attention to a case from

---

[19] Maryland has a similar doctrine of construction. "[P]arties to a contract are deemed to have contracted with knowledge of existing law and that 'the laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they

(Continued…)

17

the United States Court of Appeals for the Fourth Circuit citing a case of the Virginia Supreme Court, both of which suggest that, when constructing insurance contracts, a relevant "'statutory provision is as much a part of the policy as if incorporated therein.'" *A&E Supply Co. v. Nationwide Mutual Fire Insurance Co.*, 798 F.2d 669, 677 (4th Cir. 1986) (citing *State Farm Mut. Auto. Ins. Co. v. Duncan*, 203 Va. 440, 443, 125 S.E.2d 154, 157 (1962)); *see also Dooley v. Hartford Acc. & Indem. Co.*, 892 F. Supp. 2d 762, 764 (D.W. Va. 2012); *Buchanan v. Doe*, 246 Va. 67, 72, 431 S.E.2d 289, 292 (1993) ("Although not expressed in a written contract, a statutory requirement affecting the performance of the contract becomes a part of its terms just as if it had been incorporated therein."). Petitioners have not provided us with any cases in which Virginia courts treat relevant statutory provisions as implied terms in contracts other than insurance contracts, although it appears, based on our research of Virginia case law, that other types of contracts are deemed to incorporate existing laws implicitly. *See Smith v. Commonwealth*, 286 Va. 52, 58, 743 S.E.2d 146, 150 (2013) (noting, in a case involving a plea agreement, that "contracts are deemed to implicitly incorporate the existing law," but are still subject to the state's regulatory police power); *Wright v. Commonwealth*, 49 Va. App. 58, 62, 636 S.E.2d 489, 491 (2006) (noting, in another case involving a plea agreement, "[it is a] basic rule of contract law that the law in force on the date a contract is formed determines the rights of its parties." (internal quotations omitted)); *Smith v.*

---

(…continued)

were expressly referred to or incorporated in its terms.'" *Post v. Bregman*, 349 Md. 142, 156, 707 A.2d 806, 813 (1998) (quoting *Wilmington Trust Co. v. Clark*, 289 Md. 313, 320, 424 A.2d 744, 749 (1981)).

*Smith*, 41 Va. App. 742, 751, 589 S.E.2d 439, 443 (2003) (noting, in a case involving a spousal support agreement, that the "law effective when the contract is made is as much a part of the contract as if incorporated therein" (quoting *Paul v. Paul*, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974))); *Haughton v. Lankford*, 189 Va. 183, 190, 52 S.E.2d 111, 114 (1949) (determining that contracts for the sale of oysters "must be considered as containing an implied condition that it is subject to the exercise of the State's regulatory police power").

Petitioners highlight, in this regard, a portion of the Labor and Employment title of the Virginia Code, which addresses the time and medium of payment of wages, the withholding of wages, and the proceedings to enforce compliance, among other topics. Va. Code Ann. § 40.1-29 (West 2009). The relevant portions of that statute are as follows:

> A. 1. All employers operating a business shall establish regular pay periods and rates of pay for employees except executive personnel. All such employers shall pay salaried employees at least once each month and employees paid on an hourly rate at least once every two weeks or twice in each month . . . . Upon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated.
>
> 2. Any such employer who knowingly fails to make payment of wages in accordance with this section shall be subject to a civil penalty not to exceed $1,000 for each violation. . . .
>
> \* \* \*

19

C. No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee. An employer, upon request of his employee, shall furnish the latter a written statement of the gross wages earned by the employee during any pay period and the amount and purpose of any deductions therefrom.

D. No employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment or the continuance therein, except as otherwise provided by law.

E. An employer who willfully and with intent to defraud fails or refuses to pay wages in accordance with this section is guilty of a Class 1 misdemeanor if the value of the wages earned and not paid by the employer is less than $10,000 and is guilty of a Class 6 felony if the value of the wages earned and not paid is $10,000 or more or, regardless of the value of the wages earned and not paid, if the conviction is a second or subsequent conviction under this section. . . .

    *                 *                 *

G. In addition to being subject to any other penalty provided by the provisions of this section, any employer who fails to make payment of wages in accordance with subsection A shall be liable for the payment of all wages due, plus interest at an annual rate of eight percent accruing from the date the wages were due.

H. Civil penalties owed under this section shall be paid to the Commissioner for deposit into the general fund of the State Treasurer. . . .

Petitioners argue that the foregoing statutory provisions should be considered part and parcel of the parties' Agreement as implied terms. The Agreement, in the Petitioners' view, thereby provides an administrative remedy in cases of withheld wages, but no private cause of action (other than a breach of contract claim). Construed as such, the

20

dispute between the parties is one of construction of a contract's terms, and thus *lex loci contractus* determines that the law of Virginia should apply, to the exclusion of the MWPCL.

We are not persuaded by this argument. Rather, we agree with Feinberg that such an understanding of *lex loci contractus* would be an impermissibly broad application of the doctrine. We are unaware of a case in which we used *lex loci contractus* to import another forum's statute into a foreign contract as an implied term and then interpret the contract in light of that implied term to the exclusion of our laws and remedies. Instead, the doctrine of *lex loci contractus* should be understood properly to apply only to the express terms of a contract, not implied ones.

Moreover, Petitioners' argument, that we look to Virginia's law in determining whether wages were withheld improperly and, if so, the proper remedy, would lead nonetheless to an outcome unfavorable to Petitioners: the assertedly implied term of § 40.1-29 is essentially one of remedies, but under the choice of law principle *lex fori*, we look to the law of the forum in determining the remedy available to a plaintiff in a contract-related action, not *lex loci contractus*. *Eastwood v. Kennedy*, 44 Md. 563, 567–68 (1876); *see Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc.*, 356 Md. 542, 741 A.2d 462 (1999) (applying the rate of post-judgment interest of the *lex fori* (Maryland) instead of that of the judgment-rendering state); *see also Traylor v. Grafton*, 273 Md. 649, 668–69, 332 A.2d 651, 664 (1975) (noting that the answer to the question of whether the subject clause should be construed to provide for the payment of liquidated damages was the same under both the *lex fori* and the *lex loci contractus*).

21

Thus even though the Agreement between the parties is a "Virginia" contract, if we embraced Petitioners' choice of law argument, the remedies available to Feinberg are determined by the law of Maryland as the *lex fori*.

In *Himes*, 178 Md. App. 504, 943 A.2d 30, the Court of Special Appeals considered a very similar factual situation to the present case, holding that Virginia employers could be subject to liability under the MWPCL in certain circumstances. The employee in *Himes* brought in Maryland courts a breach of contract claim and a MWPCL claim seeking to recover contractually-provided severance pay. *Himes*, 178 Md. App. at 512–13, 943 A.2d at 34–35. The employee, who lived in Maryland, worked for a Virginia employer and spent most of his work time in that state. *Himes*, 178 Md. App. at 513–15, 943 A.2d at 35–36. Anderson, the employee, was tasked with overseeing the construction of a building in Virginia, but, as a part of those responsibilities, he was required to present a proposal in Baltimore and attend meetings twice a month in Baltimore. *Id.* On two other occasions, the employee was asked to visit a work site in Gaithersburg and work on a project in Aberdeen in Maryland. *Himes*, 178 Md. App. at 515–16, 943 A.2d at 36–37. Himes, the employer, argued that the MWPCL extended liability only to *Maryland* employers, and, being a Virginia company, it was not liable to Anderson. *Himes*, 178 Md. App. at 532–33, 943 A.2d at 46. In riposte, the employee argued for a more expansive understanding of the term "employer." *Himes*, 178 Md. App. at 534, 943 A.2d at 47.

The intermediate appellate court agreed with the employee. After noting that the scope of the term "employer" in the MWPCL depended on the meaning of the related

22

phrase "employs an individual in the State," § 3-501(b), the court turned to the definition

of "employs." *Himes*, 178 Md. App. at 535, 943 A.2d at 48. As defined in § 3-101, the

term "employ" specifically includes "(i) allowing an individual to work; and

(ii) instructing an individual to be present at a work site." The Court of Special Appeals

concluded that "[t]he plain language of LE section 3-101 covers the situation in which a

company outside of Maryland directs its employee to go to a work site in Maryland."

*Himes*, 178 Md. App. at 535, 943 A.2d at 48. Because the employee attended meetings

twice a month in Baltimore, the intermediate appellate court concluded that the Virginia

employer must confront the employee's MWPCL claims.[20] *Id.*

---

[20] Petitioners suggest that the facts in *Himes* are distinguishable clearly from the case at bar, noting that (1) the employee in *Himes* was a Maryland resident (it appears that Feinberg lived in the District of Columbia while employed by C&A, although he lived in Maryland for a short time immediately after his employment ended), (2) the contract between the parties had been sent to the employee's home in Maryland for acceptance (Feinberg and C&A executed likely the Agreement in Virginia), (3) the employee's primary job required him to spend substantial time each month on a regular basis in Maryland (Feinberg, although responsible for handling Maryland matters for C&A's clients, was obliged to operate from C&A's Virginia offices the majority of the time), and (4) the disputed pay was connected substantially to his employment activities in Maryland (the Agreement in the present case was obscure in this regard). Regarding Petitioners' last point, the disputed pay in *Himes* did not seem to be connected substantially to the employee's activities in Maryland, but instead was a severance package.

The Court of Special Appeals in *Himes* gave no weight to the residency of the employee nor where the contract had been signed. 178 Md. App. 504, 532–36, 943 A.2d 30, 46–49 (2008). Indeed, the opinion does not note where the employee signed the written employment agreement, but does say that a draft was sent to the employee at his home in Annapolis and that he executed it shortly after receiving it. *Himes*, 178 Md. at 513, 943 A.2d at 35. Those two facts were relevant only to questions of the Maryland court's personal jurisdiction over the parties. *Himes*, 178 Md. App. at 524–32, 943 A.2d at 41–46. As to the question of work time spent by Anderson in Maryland, the Court of Special Appeals did not highlight other points of connection that the employee had with

(Continued…)

23

The Court of Special Appeals did not consider explicitly in *Himes lex loci contractus*, *lex fori*, or any other choice of law doctrines. Nonetheless, general conflict of laws issues were raised. The employer alluded to the Maryland Department of Labor, Licensing, and Regulation's [DLLR]'s pamphlet entitled "Maryland Guide to Wage Payment and Employment Standards" in suggesting certain jurisdictional limits on the MWPCL. *Himes*, 178 Md. App. at 533, 943 A.2d at 47. The version of the pamphlet contained the following note:

> **\*Note on Jurisdiction.**
> Claims for unpaid wages must be brought in the state in which the work was performed. If work was performed in more than one state, claims may generally be filed in the state in which the employer maintains its business office—that is, the office where the employee reports to or was hired out of.[21]

*Id.* Based on the language of the pamphlet and Himes's reading of the term "employer," the employer argued that suit should have been filed in Virginia under § 40.1-29 instead

---

(…continued)
Maryland, including the projects that he worked on in Gaithersburg and Aberdeen. The intermediate appellate court thought apparently that the Baltimore meetings alone were enough to warrant liability under the MWPCL. *See Himes*, 178 Md. App. at 535, 943 A.2d at 48 ("Anderson had to attend meetings twice a month at Lockheed Martin's Baltimore office, in the State of Maryland. On that evidence alone, Himes was an 'employer' under the MWPCL, and therefore was subject to liability for violating it."). Finally, the parties disputed the severance package due the employee under the employment contract, which did not appear to be connected specifically to the employee's Maryland work, as opposed to work performed in Virginia or other states. *Himes*, 178 Md. App. at 513, 943 A.2d at 35.

[21] A pamphlet by the same name and containing the same information is available currently on the DLLR's website. Maryland Department of Labor, Licensing and Regulation, http://www.dllr.state.md.us/labor/wagepay/ (last visited Jan. 23, 2014).

24

of in Maryland under the MWPCL. *Id.* The intermediate appellate court responded to that argument:

> The DLLR's "Note on Jurisdiction," stating that when work has been performed in more than one state "claims may generally be filed in the state in which the employer maintains its business office[,]" cannot alter the plain meaning of the language of the controlling statute or its application to the evidence in this case. When statutory language is unambiguous, we will not defer to an agency's differing interpretation of it. Moreover, the wording of the "Note on Jurisdiction" is not mandatory and does not wholly support [the employer's] position. The note states only that, when an individual has performed work in more than one state, his claim for unpaid wages "*may generally* be filed in the state where the employer maintains its business office." (Emphasis added). It does not *require* that such a claim be filed in the state where the employer keeps a business office. Thus, even under the DLLR's interpretation of the MWPCL, [the employee] was not prohibited from filing his claim for unpaid wages in Maryland.[22]

*Himes*, 178 Md. App. at 535–36, 943 A.2d at 48 (emphasis in original) (citations omitted). The Court of Special Appeals affirmed ultimately the trial court's award to the employee of treble damages, attorney's fees, and costs. *Himes*, 178 Md. App. at 543, 943 A.2d at 52–53. The employer petitioned for a writ of certiorari, which we denied. *Himes v. Anderson*, 405 Md. 291, 950 A.2d 829 (2008).

Based on our analysis of the doctrine of *lex loci contractus*, we come to a conclusion shared by the Court of Special Appeals: employees working for employers located in Virginia are not limited to the remedies available under Virginia's wage

---

[22] The intermediate appellate court also noted, in a footnote, that the pamphlet declares that it "should not be cited as legal authority."

payment laws, but may, in certain circumstances, be answerable to claims under the

MWPCL in Maryland courts.[23]

### C.    The "Strong Public Policy" Exception
### *to* Lex Loci Contractus

Given our holding, we need not engage with Feinberg's fallback argument that the

MWPCL falls within the public policy exception to the applicability of *lex loci*

*contractus*.  Nonetheless, we are moved to comment (at some length) on his contention

because of how federal courts have examined and reached conclusions regarding this

quintessentially state law question.  Even if we were prepared to hold that *lex loci*

*contractus* applied to this dispute in the manner in which Petitioners would have us apply

the doctrine, we would be inclined not to foreclose the possibility of Feinberg recovering

under the MWPCL in Maryland's courts for public policy reasons.

We have long recognized an exception to the application of *lex loci contractus*: we

refuse to apply the doctrine when doing so would be "contrary to a strong public policy

of this State."  *ARTRA Group, Inc.*, 338 Md. at 573, 659 A.2d at 1301; *see Laboratory*

---

[23] We were asked to abandon the doctrine of *lex loci contractus* in *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 659 A.2d 1295 (1995), but we declined to do so then, and we see no need in the present case to abandon it now.  In that case, we recognized that *lex loci contractus* has suffered a "significant modern erosion," and that, in the proper case, we might "have to reevaluate what the best choice-of-law rules ought to be to achieve simplicity, predictability, and uniformity."  *ARTRA Group, Inc.*, 338 Md. at 581, 659 A.2d at 1305.  This is not the proper case.  We are satisfied currently with the level of simplicity, predictability, and uniformity provided by the doctrine.
　　More recently, in *Erie Insurance Exchange*, we were asked to abandon *lex loci contractus*' cousin, *lex loci delicti*, which requires essentially that we apply the law of the state in which a tort occurred, with some exceptions.  399 Md. at 624, 925 A.2d at 651.  We declined to do so.  *Erie Ins. Exchange*, 399 Md. at 625, 925 A.2d at 651.

*Corp. of America v. Hood*, 395 Md. 608, 621, 911 A.2d 841, 848 (2006) ("We have just as consistently held, however, that the *lex loci contractus* principle is not inflexible and that it 'does not apply to a contract provision which is against Maryland public policy.'" (citing *Bethlehem Steel*, 304 Md. at 188, 498 A.2d at 608)). As long ago as 1831 our predecessors determined that "[i]t is a universal principle, governing the tribunals of all civilized nations, that the *lex loci contractus* controls the nature, construction, and validity of the contract. The exceptions are, where it would be dangerous, against public policy, or of immoral tendency, to enforce that construction here." *Trasher v. Everhart*, 3 G. & J. 234, 234 (1831).

In order for Maryland's public policy to override the doctrine, it "must be very strong and not merely a situation in which Maryland law is different from the law of another jurisdiction." *Hart*, 327 Md. at 530, 611 A.2d at 102 (citing *Kramer*, 311 Md. at 390, 535 A.2d at 467); *see Ward*, 328 Md. at 247, 614 A.2d at 88 ("The rule of *lex loci contractus* is subject to a limited exception where a contractual provision or the foreign law is contrary to a very strong Maryland public policy."); *Jacobs v. Adams*, 66 Md. App. 779, 793, 505 A.2d 930, 937 (1986) ("We must caution that 'public policy' is not a term to be bandied about lightly in every conflict of laws case. One should be well convinced of the weight of a supposed policy before advancing it against bedrock legal principles."). The requirement of showing that the public policy is sufficiently strong has been described as a "heavy burden" on the party that urges rejection of the application of the otherwise applicable foreign law. *Hart*, 327 Md. at 530, 611 A.2d at 102 (quotations omitted).

27

In *Bethlehem Steel*, we considered whether a provision of a construction contract executed in Pennsylvania was unenforceable in Maryland's courts as contrary to Maryland public policy. 304 Md. 183, 498 A.2d 605. The contract between the antagonists provided that the contractor would hold the steel plant owner harmless from any injuries suffered by the contractor or any subcontractors. *Bethlehem Steel*, 304 Md. at 185–86, 498 A.2d at 606. After an employee was electrocuted at the plant, the injured employee filed suit against the steel plant owner in Maryland. The plant owner filed a declaratory judgment action against Zarnas & Co., a painting company, seeking to enforce the indemnity provision. *Bethlehem Steel*, 304 Md. at 186, 498 A.2d at 606. The Maryland Code, in § 5-305 of the Courts and Judicial Proceedings Article, Md. Code Ann., Cts. & Jud. Proc. (1974, 1984 Repl. Vol.),[24] addressed clauses in construction contracts providing for indemnity against the results of one party's sole negligence. The statute "unequivocally told the Maryland judiciary that such a clause 'is void and unenforceable' . . . [and] in the same sentence of the statute, the General Assembly expressly stated that such an indemnity provision 'is against public policy.'" *Bethlehem Steel*, 304 Md. at 190, 498 A.2d at 608 (citations omitted). We held there that the Legislature's "explicit determination of public policy is sufficient . . . to override the *lex loci contractus* principle." *Bethlehem Steel*, 304 Md. at 190, 498 A.2d at 608.

In *National Glass, Inc. v. J.C. Penney Properties, Inc.*, a subcontractor sought, after a contractual breach, to establish a mechanics' lien for work and materials furnished

---

[24] This statute has been relocated since to Maryland Code (1974, 2013 Repl. Vol.), Cts. & Jud. Proc. § 5-401.

at a Maryland construction site. 336 Md. 606, 608, 650 A.2d 246, 247 (1994). The contract contained a choice of law provision opting for Pennsylvania law and also waived the right to a mechanics' lien, which clause was permitted under the law of that state. *Id.* We noted first that Maryland's "strong public policy" exception analysis was the same in *lex loci contractus* cases where the parties included choice of law clauses in their contract. *National Glass*, 336 Md. at 613 n.4, 650 A.2d at 250 n.4. We turned to the language of the specific statute to determine whether our anti-waiver provision evidenced strong public policy, and held that it did. *National Glass*, 336 Md. at 614–15, 650 A.2d at 250. The mechanic's lien law, as it existed at the time in § 9-113 of the Real Property Article, contained a provision that stated specifically that contractual provisions made in violation of the statute were "void as against public policy of this State."[25] *National Glass*, 336 Md. at 613–15, 650 A.2d at 250 (citing Maryland Code (1974, 1988 Repl. Vol.), Real Property Art., §§ 9-101 *et seq.*). Such explicit language "provides clear legislative indication that any provision attempting to waive the right to a mechanic's lien is void" and constituted "fundamental [public] policy of Maryland." *National Glass*, 336 Md. at 614–15, 650 A.2d at 250.

---

[25] The statute was amended subsequent to the work being performed, but prior to the filing of the subcontractor's suit. Previously, the statute read, "[a]ny waiver provision of a contract made in violation of this section is *void*," *National Glass*, 336 Md. at 614, 650 A.2d at 250, but was amended to state: "[a]ny provision of a contract made in violation of this section is *void as against the public policy of this State.*" *Id.* We noted that the amendment was "not a substantive change, but merely a clarification" as to why a contract provision waiving the right to claim a mechanic's lien is void and unenforceable. *National Glass*, 336 Md. at 614–15, 650 A.2d at 250.

The same strong public policy analysis occurs in discussions of *lex loci delicti*. In *Erie Insurance Exchange*, the United States Court of Appeals for the Fourth Circuit certified two questions of law to us arising from a breach of contract action in which two insured individuals sought damages against their uninsured/underinsured motorist insurer. *Erie Insurance Exchange*, 399 Md. at 603–04, 925 A.2d at 639. The *Erie* Court was asked to determine whether a statutory non-economic damages "cap" represented strong public policy of Maryland. *Id.* We determined that Maryland's public policy reflected in the non-economic damages "cap" was not so strong as to override *lex loci delicti*. *Erie Insurance Exchange*, 399 Md. at 628, 925 A.2d at 653. Because the Maryland General Assembly had not addressed specifically the issue of the applicability of the non-economic damages "cap" to claims for uninsured/underinsured motorist damages, and had not given "an unequivocal directive to the Maryland judiciary to apply the cap in these cases," we determined that *lex loci delicti* applied and that Maryland's public policy as reflected in the statutory "cap" was not "sufficiently strong to warrant overriding the rule of *lex loci delicti*." *Erie Insurance Exchange*, 399 Md. at 633–34, 925 A.2d at 657; *see Black v. Leatherwood Motor Coach Corp.*, 92 Md. App. 27, 43, 606 A.2d 295, 302–03 (1992) (holding that the existence of a "cap" on non-economic damages was not of sufficient importance to override the principle of *lex loci delicti*).

Anti-waiver provisions and explicit legislative language are not required always in order to reach a conclusion that a Maryland Code provision represents strong public policy. On occasion, we have given some weight to evolving public policy. In *Hood*, the United States District Court for the District of Maryland certified three questions of law

30

to us, arising from a wrongful birth action by two Maryland residents against two North Carolina corporations. *Hood*, 395 Md. at 610, 911 A.2d at 842. Maryland recognized wrongful birth actions, but North Carolina did not. *Hood*, 395 Md. at 611, 911 A.2d at 842–43. The District Court needed to know ultimately whether to apply the substantive law of Maryland or of North Carolina. *Id.* We extrapolated from a Maryland statutory prohibition on interfering with a woman's right to terminate her pregnancy that another state's failure to recognize wrongful birth actions was contrary to the strong public policy of Maryland. *Hood*, 395 Md. at 624–25, 911 A.2d at 850–51. The court determined that the right to seek damages in a wrongful birth action represented "clear, strong, and important Maryland public policy," as represented in Maryland Code § 20-209(b) of the Heath General Article, which precluded the State from "interfering with the decision of a woman to terminate her pregnancy at any time . . . if the fetus is affected by genetic defect or serious deformity or abnormality." *Id.*

In *Kramer v. Bally's Park Place, Inc.*, we considered whether a New Jersey gambling contract violated Maryland public policy such that a Maryland court should refuse to apply New Jersey law. 311 Md. 387, 535 A.2d 466. The petitioner wrote a check for $5,000, payable to Bally's Park Place, as payment of a gambling debt, but argued before us that gambling debts were not recognized as legal or valid in Maryland. *Kramer*, 311 Md. at 388–89, 535 A.2d at 466–67. The development and advance of gambling laws were in a state of flux, as some forms of gambling were becoming legalized and, accordingly, we determined that prohibitions on gambling in Maryland did not represent our state's strong public policy. *Kramer*, 311 Md. at 396, 535 A.2d at 470.

31

We drew similar inferences, based on the changes in laws governing terms of credit card agreements, in *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 624–27, 921 A.2d 799, 806–08 (2007). In that case, we reviewed the history of Maryland's laws regarding bank-issued credit cards, and held that, based on the tightening of some requirements and the loosening of others, and the absence of any clear legislative intent indicating strong public policy, Maryland's laws regarding signatures on credit card agreements did not constitute "fundamental" public policy. *Id.*

The Court of Special Appeals has looked also to changing societal mores in determining whether a strong public policy is implicated by legislative enactment. In *Linton v. Linton*, the intermediate appellate court engaged in an analysis to determine whether public policy would be violated by Maryland courts entertaining an inter-spousal tort action prohibited here at the time by the doctrine of inter-spousal immunity (but allowable in Virginia) pursuant to *lex loci delicti*. 46 Md. App. 660, 663, 420 A.2d 1249, 1251 (1980). Referencing changing perspectives in society on permitting the bringing of suits regarding inter-spousal torts, the court held that the public policy reflected in Maryland's inter-spousal immunity doctrine was not sufficiently strong to decline to entertain the suit. *Linton*, 46 Md. App. at 663, 667, 420 A.2d at 1251, 1253. The Court of Special Appeals revisited this question in the context of interfamilial tort suits, reiterating the reasoning of *Linton* in *Rhee v. Combined Enterprises, Inc.* 74 Md. App. 214, 223–25, 536 A.2d 1197, 1201–02 (1988).

Petitioners' brought to our attention several cases in which federal judges, applying conflict of law principles, found that a private right of action under the MWPCL

32

was not available to employees claiming unpaid wages under contracts entered outside of Maryland. Each of these cases involved contractual choice of law clauses,[26] and in each, the sitting judge considered whether the MWPCL reflected strong public policy of Maryland, and concluded ultimately that it did not.

In *Taylor v. Lotus Development Corp.*, the hearing judge determined that a choice of law provision in the parties' employment contract, electing to be governed under Massachusetts law, was enforceable to the exclusion of the MWPCL, because the MWPCL did not constitute public policy strong enough to overcome the parties' choice of law provision. *Taylor v. Lotus Dev. Corp.*, 906 F. Supp. 290, 297–98 (D. Md. 1995). That court was of the opinion that, under Maryland law, the "mere presence of dissimilar law is insufficient to render a choice-of-law provision void; rather, [the other state's] law must run contrary to a *strong* Maryland public policy to be unenforceable." *Taylor*, 906 F. Supp. at 298 (emphasis added). The *Taylor* court determined that the MWPCL did not represent Maryland's "fundamental public policy" because the statute did not "unambiguously express[] that [its] provisions represented fundamental public policy of the state [or that] any purported waiver of the provisions contained in those statutes was expressly unenforceable." *Id.* The MWPCL, "simply by its existence" alone, did not represent a fundamental policy of Maryland. *Id.*

---

[26] *See, e.g.*, *Kunda v. C.R. Bard Inc.*, 671 F.3d 464 (4th Cir. 2011) (choosing New Jersey law); *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22 (S.D.N.Y. 2010) (choosing New York law); *Taylor v. Lotus Development Corp.*, 906 F. Supp. 290 (D. Md. 1995) (choosing Massachusetts law); *Blanch v. Chubb & Son, Inc.*, No. CCB-12-1965, 2014 WL 3421534 (D. Md. Jul. 10, 2014) (choosing New Jersey law).

Roughly fifteen years later, in *Sedghi v. Patchlink Corp.*, another judge in the federal District Court of Maryland concluded that the MWPCL did not embody strong public policy, and accordingly enforced a choice of law clause opting to apply Arizona law. No. JFM-07-1636, 2010 WL 3895472, at *4 (D. Md. Sept. 30, 2010).[27] That court relied on *Taylor* for the proposition that "the MWPCL did not represent fundamental public policy." *Id.* *Sedghi* was reversed in part ultimately, but on other grounds. *Sedghi v. Patchlink Corp.*, 440 Fed. Appx. 165 (4th Cir. 2011).

In *Kunda v. C.R. Bard, Inc.* the United States Court of Appeals for the Fourth Circuit held that the MWPCL did not express fundamental Maryland policy sufficiently enough to trump the parties' New Jersey choice of law contract provision. 671 F.3d 464, 466 (4th Cir. 2011). That court determined that the MWPCL contained no express language of legislative intent nor any anti-waiver provisions. *Kunda*, 671 F.3d at 468. Immediately prior to the filing of the opinion in *Kunda*, however, House Bill 298 (2011 session), enacted by the Maryland Legislature, took effect and changed the landscape of the MWPCL by adding an anti-waiver provision of a sort to the MWPCL. *See infra* Slip Op. 35–39. Perhaps the Fourth Circuit was unaware of this change; perhaps they determined not to assign to the change much weight.[28] That court reasoned that, as (at

---

[27] *See supra* note 12.

[28] The Fourth Circuit suggested:

> [T]he MWPCL contains no express language of legislative intent that that law is a fundamental Maryland public policy. Furthermore, the MWPCL contains no language indicating

(Continued…)

that time) forty-two other states had enacted similar wage payment laws, the MWPCL likely was not fundamental public policy, as "[t]he availability of comparable, albeit different, legislation in different states demonstrates that protection under the MWPCL is unnecessary where there is a substitute, as there is here." *Kunda*, 671 F.3d at 469. We do not deign to speak for our fellow states as to why they may have enacted similar wage payment laws. We can say that, in Maryland, the protections afforded the timely payment of wages owed are quite important, and many of our laws dealing with the subject reflect our strong public policies in that regard.

We encourage a future Maryland Court to hold (in light of the considered dicta expressed here) that the MWPCL represents strong Maryland public policy. The anti-waiver provision and other clear indicators of legislative intent point to such a conclusion. "[D]eclaration of the public policy of the State is normally the function of the legislative branch of government; in discerning that policy, courts consider, as a primary source, statutory . . . provisions." *Jones v. Malinowski*, 299 Md. 257, 273 n.4, 473 A.2d 429, 437 n.4 (1984). An anti-waiver provision was added to the MWPCL by House Bill 298 of the 2011 session as § 3-502(f), which provides that "[a]n agreement to work for less than the wage required under this subtitle is void." Md. Code (1999, 2008

---

(…continued)

> that any contractual terms contrary to its provisions are void and unenforceable, or that any provision of the MWPCL may not be waived by agreement. Thus, we find that the MWPCL is not a fundamental Maryland public policy.

*Kunda*, 671 F.3d at 468.

Repl. Vol., 2014 Cum. Supp.), Labor & Employment Art., § 3-502(f). The subtitle referenced by § 3-502(f) is Subtitle 5 (Wage Payment and Collection) of Title 3 (Employment Standards and Conditions). The "wage[s] required" means "all compensation that is due to an employee for employment," including bonuses, commissions, fringe benefits, overtime benefits, and other forms of remuneration promised for services. § 3-501(c). Under § 3-502(f), parties cannot make agreements in which they agree to work for less than the wages owed to them. This anti-waiver provision is similar to the one in *National Glass*, where we held that an anti-waiver provision signaled the existence of strong public policy.[29]

Before the anti-waiver provision was added, our case law suggested that employees could not contract away their right to be compensated for their work. In *Medex*, we held that "[c]ontractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts." *Medex*, 372 Md. at 39, 811 A.2d at 304. We did not have occasion in that case to discuss whether this reflected the *strong* public policy of our State, but we agreed with the Court of Special Appeals that "a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the

---

[29] In *Falls v. 1CI, Inc.*, the Court of Special Appeals determined that employees could contract to resolve all employment-related claims, including MWPCL claims, in arbitration. 208 Md. App. 643, 660, 57 A.3d 521, 531 (2012). Considering the Federal Arbitration Act and the Maryland Uniform Arbitration Act, the intermediate appellate court concluded that it should construe liberally contracts in favor of arbitration. *Falls*, 208 Md. App. at 657–60, 57 A.3d at 529–31. We decline to comment at this time on the impact of arbitration clauses on MWPCL claims.

contract and that policy." *Id.* (citing *McCabe v. Medex*, 141 Md. App. 558, 566, 786 A.2d 57, 62 (2001)).

Despite the language in *Medex* suggesting the importance of the policy embodied in the MWPCL, federal courts continue, it seems, to hold that the MWPCL does not apply when parties choose another state's law in a choice of law clause. *See, e.g.*, *Kunda*, 671 F.3d at 468 ("[T]he Maryland Court of Appeals' decision in *Medex v. McCabe* fails to show that the MWPCL is a fundamental Maryland public policy . . . ."); *Lantry v. Pitney Bowes Inc.*, No. 08:08-CV-1273-AW, 2011 WL 3843693, at *3 (D. Md. Aug. 29, 2011)[30]; *Sedghi*, 2010 WL 3895472, at *4 (concluding that *Medex* was not on point because "the Court of Appeals was considering only whether the provision of a Maryland contract violated Maryland public policy, not whether the [MWPCL] incorporates a strong public policy"); *Yeibyo*, 2008 WL 182502, at *5–6. *But see Butler v. VisionAIR, Inc.*, 385 F. Supp. 2d 549, 558 (D. Md. 2005) (denying a motion for summary judgment in light of a factual question as to the nature of an employee's commissions, and noting that an employment agreement clause "may contravene Maryland's public policy as embodied in the MWPC[L]"); *Adams v. Wells Fargo Advisors, LLC*, No. ELH-12-2130, 2014 WL 2124447, at *26 (D. Md. May 21, 2014) (noting, in dicta, that, "[c]ritically, an employer and employee cannot contract around L.E. § 3-505, because 'a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict

---

[30] *See supra* note 12.

between the contract and that policy,'" but resolving a motion for summary judgment against an employee on other grounds (citing *Medex*, 372 Md. at 39, 811 A.2d at 304)).[31]

The legislative history underlying the addition of the anti-waiver provision in 2011 indicates that its inclusion was supported by public policy considerations. The anti-waiver provision of the MWPCL originated as House Bill 298 and was introduced in the Maryland General Assembly in 2011. H.D. 298, 2011 Leg., 428th Sess. (Md. 2011). The Fiscal and Policy Note of the Bill suggested that it had no effect except to "clarif[y] current law." Dep't Legis. Serv., Fiscal & Pol'y Note, 2011-298, at 1 (Md. 2011). The term "clarifying" "sometimes can be helpful in signaling legislative intent." *Johnson*, 430 Md. at 389, 61 A.3d at 45. The term "can mean . . . that this is what lawmakers viewed as the state of the law all along." *Johnson*, 430 Md. at 389, 61 A.3d at 45.[32] While amendments are not controlling as to the meaning of prior iteration of the same statutory scheme, "'nevertheless, subsequent legislation can be considered helpful to determine legislative intent.'" *Johnson*, 430 Md. at 389, 61 A.3d at 45 (quoting *Chesek v. Jones*, 406 Md. 446, 462, 959 A.2d 795, 804 (2008)).

The testimony of one of the Bill's sponsors, Delegate Joseline A. Peña-Melnyk, before the Senate Finance Committee, is particularly informative. She explained that employers doing business in Maryland were forcing employees to waive their MWPCL

---

[31] *See supra* note 12.

[32] The word can also refer to "an oversight that lawmakers subsequently decided to correct by 'clarifying' the law," *Johnson*, 430 Md. at 390, 61 A.3d at 45, or "a simple change in style or language." *Id.* n.15.

rights, either explicitly or by "applying the laws of other states to their employment relationship that provide fewer protections than the MWPCL." *Wage Payment and Collection: Void Agreements: Hearing on H.B. 298 Before the H.D. Economic Matters Committee*, 428th Sess. 1 (2011) (statement of Del. Joseline A. Peña-Melnyk). She named *Sedghi*[33] in her testimony, recounting that court's determination that the MWPCL did not represent "important 'public policy.'" She suggested that "[b]y placing an express prohibition against contracting for less than the wages owed, we can clarify for the courts that the MWPCL is important public policy and remove any question that such agreements should be voided." *Id.*; *see Johnson*, 430 Md. at 388, 61 A.3d at 44–45 (recognizing that the existence of a copy of a decision in a bill file along with numerous references to a decision of the Court of Appels in the legislative history indicated that an amendment was made in response to that decision). She noted also that the same language existed already in § 3-405 of the Maryland Wage and Hour Law and should be interpreted the same way.[34] *Id.* She iterated the same testimony regarding H.B. 298 before the House Economic Matters Committee a month earlier. *Wage Payment and Collection: Void Agreements: Hearing on H.B. 298 Before the S. Finance Committee*, 428th Sess. 1 (2011) (statement of Del. Joseline A. Peña-Melnyk). The bill passed in the House and Senate and became effective on 1 October 2011.

---

[33] She identified mistakenly the case as "Sedgwick v. Patchlink Corp."

[34] We are unaware of any court, state or federal, that has had occasion to interpret this statute.

The interpretation of the MWPCL requires a certain appreciation of other provisions of Maryland's overall labor and employment statutory scheme:

> When the statute to be interpreted is part of a statutory scheme, it must be interpreted in that context. That means that, when interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme. Thus, statutes on the same subject are to be read together and harmonized to the extent possible . . . .

*Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302–03, 783 A.2d 667, 671 (2001) (citations omitted). Workers' compensation statutes, although sufficiently different from contract and tort principles so as to be considered separately, nonetheless have some affinity to both. *See Hood*, 395 Md. at 621, 911 A.2d at 848. In the context of workers' compensation statutes, we have at times applied a public policy exception. *See Hutzell v. Boyer*, 252 Md. 227, 249 A.2d 449 (1969); *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207 (1983). In *Hutzell*, we rejected the application of Virginia law which otherwise would have applied because Maryland had "a genuine interest in the welfare of a person injured within its borders" and the "social and economic problems following [the injury] . . . are properly matters of public concern." *Hutzell*, 252 Md. at 233, 249 A.2d at 452. More recent workers' compensation cases reflect a pointed willingness by Maryland to allow itself to be a forum where the rights of employees may be vindicated to the fullest extent possible under our workers' compensation statutory scheme. For example, in *Pro-Football, Inc. v. McCants*, a player on the roster of the Washington NFL football team brought in Maryland a workers' compensation claim for game injuries sustained in various forums—some in Maryland, and some out of state. 428 Md. 270,

40

275–76, 51 A.3d 586, 589–90 (2012). McCants' employment contract contained a forum-selection clause choosing Virginia law, but we allowed McCants nonetheless to maintain a claim in Maryland for the injuries sustained here and out-of-state. *McCants*, 428 Md. at 288, 51 A.3d at 596–97; *see Pro-Football, Inc. v. Tupa*, 197 Md. App. 463, 471, 474, 14 A.3d 678, 682, 684 (2011), *aff'd*, 428 Md. 198, 51 A.3d 544 (2012) (holding that a player on the roster of the Washington NFL football team was a "covered employee" under § 9-203(a) of the workers' compensation statute despite working "intermittently" in Maryland playing games at FedEx Field and "primarily" in Virginia practicing).

Although significant differences exist between our workers' compensation statutory scheme and the MWPCL, we refer to these cases to make a point that Maryland is willing generally to allow itself to be used as a forum by workers seeking recovery of their wage claims. We offer no prediction as to the ultimate success or failure of Feinberg's claim, recognizing that additional facts must be found on remand before its merits may be adjudicated finally. The mere fact that Feinberg and Petitioners entered into a "Virginia" employment contract does not prohibit, however, maintenance of Feinberg's claims under the MWPCL.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND, SITTING IN MONTGOMERY COUNTY,**

41

**AND TO REMAND THE CASE TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND THE CIRCUIT COURT TO BE PAID BY PETITIONERS.**

42

Circuit Court for Montgomery County
Case No.:  8778 D
Argued: November 12, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 27

September Term, 2014

JOSEPH F. CUNNINGHAM, ET AL.

v.

MATTHEW FEINBERG

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Concurring Opinion by Adkins, J.

Filed: January 27, 2015

Most respectfully, I join the judgment, but not the Majority's opinion. The Majority chooses to rest its opinion on the principle that, without a choice of law provision in the statute, "the choice of law doctrine *lex loci contractus* is not implicated" because this claim does "not involve the validity, enforceability, interpretation, or construction of the employment contract." Maj. Slip Op. at 1. I think our jurisprudence would be better served by deciding this case on the more solid ground—approved by the Majority in dictum—that the MWPCL falls within the public policy exception to the applicability of *lex loci contractus*.

The public policy exception is soundly supported, first by the remedial terms of the MWPCL itself—including treble damages, recovery of attorneys' fees, and an anti-waiver provision—and second, by our expansive interpretation of the statute. *See Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 654–55, 97 A.3d 621, 626 (2014) (concluding that employees have a right to bring a private cause of action under the MWPCL to recover unlawfully withheld overtime wages); *Marshall v. Safeway Inc.*, 437 Md. 542, 561–62, 88 A.3d 735, 746 (2014) (concluding that employees have a right to bring a private cause of action under the MWPCL to recover unlawfully withheld wages that result from miscalculating the amount of wages exempt from garnishment); *Ocean City, Md., Chamber of Commerce, Inc. v. Barufaldi*, 434 Md. 381, 393–94, 75 A.3d 952, 959 (2013) (stating that courts should exercise their discretion liberally in favor of awarding employees reasonable attorneys' fees under the MWPCL); *Medex v. McCabe*, 372 Md. 28, 37, 811 A.2d 297, 302–03 (2002) (concluding that incentive fees are "wages" under the MWPCL).

The MWPCL covers "any person who employs an individual in the State." Md. Code (1991, 2008 Repl. Vol.), § 3-501 of the Labor & Employment Article. The statute's broad terms leave no doubt that the General Assembly enacted this law with serious purpose that amounts to a firm statement of public policy. This case presents a perfect opportunity to make a clear ruling that an employee who lives and works in Maryland is entitled to the remedial benefits of the MWPCL, notwithstanding the doctrine of *lex loci contractus*. I would decide this case on that ground.